MICHELLE RIVERO, Appellant, *v.*
ELVIS RIVERO, Respondent.

No. 46915

August 27, 2009 216 P.3d 213

*Steinberg Law Group* and *Brian J. Steinberg* and *Jillian M. Tindall*, Las Vegas, for Appellant.

*Bruce I. Shapiro, Ltd.*, and *Bruce I. Shapiro*, Henderson, for Respondent.

*Fahrendorf, Viloria, Oliphant & Oster, LLP*, and *Raymond E. Oster*, Reno, for Amicus Curiae State Bar of Nevada, Family Law Section.

# OPINION

By the Court, GIBBONS, J.:

We previously issued an opinion in this case on October 30, 2008, affirming in part, reversing in part, and remanding. Respondent Elvis Rivero's petition for rehearing followed. We then ordered answers to the petition from appellant Michelle Rivero and amicus curiae, the State Bar of Nevada Family Law Section.

We will consider rehearing when we have overlooked or misapprehended material facts or questions of law or when we have overlooked, misapplied, or failed to consider legal authority directly controlling a dispositive issue in the appeal. NRAP 40(c)(2). Having considered the petition and answers thereto in light of this standard, we conclude that rehearing is not warranted. Therefore, we deny the petition for rehearing. Although we deny rehearing, we withdraw our October 30, 2008, opinion and issue this opinion in its place.

Ms. Rivero and Mr. Rivero stipulated to a divorce decree that provided for ''joint physical custody'' of their minor child, with Ms. Rivero having the child five days each week and Mr. Rivero having the child two days each week. The decree awarded no child support. Less than two months after entry of the divorce decree, Ms. Rivero brought a motion to modify child support. The district court dismissed the motion. Less than one year later, Ms. Rivero brought a motion to modify child custody and support. The district court ordered that the decree would remain in force, with the parties having joint custody of their child and neither party receiving child support. The district court deferred ruling on the motion to modify custody and ordered the parties to mediation to devise a timeshare plan.

Ms. Rivero then requested that the district court judge recuse herself. When the judge refused to recuse herself, Ms. Rivero moved to disqualify her. The Chief Judge of the Eighth Judicial District Court denied Ms. Rivero's motion for disqualification, concluding that it lacked merit. The district court later awarded Mr. Rivero attorney fees for having to defend Ms. Rivero's disqualification motion.

At the court-ordered mediation, the parties were unable to reach a timeshare agreement. Following mediation, after a hearing, the district court modified the custody arrangement from a five-day, two-day split to an equal timeshare. Ms. Rivero appeals.

We are asked to resolve several custody and support issues on appeal. Preliminarily, the parties dispute the definition of joint physical custody. Additionally, Ms. Rivero challenges the following district court rulings: (1) the court's determination that the parties had joint physical custody, (2) the court's modification of the custody arrangement, (3) the court's denial of her motion for child support,

(4) the district court judge's refusal to recuse herself and the chief judge's denial of Ms. Rivero's motion for disqualification, and (5) the court's award of attorney fees to Mr. Rivero for defending against Ms. Rivero's disqualification motion.

Initially, to address the definition of joint physical custody, we define legal custody, including sole legal custody and joint legal custody. We then define physical custody, including joint physical custody and primary physical custody. In defining joint physical custody, we adopt a definition that focuses on minor children having frequent associations and a continuing relationship with both parents and parents sharing the rights and responsibilities of child rearing. Consistent with the recommendation of the Family Law Section, this joint physical custody definition requires that each party have physical custody of the child at least 40 percent of the time. We then address the district court's rulings.

First, we address the district court's finding that the parties had a joint physical custody arrangement. In reaching our conclusion, we clarify that parties may enter into custody agreements and create their own custody terms and definitions. The courts may enforce such agreements as contracts. However, once the parties move the court to modify the custody agreement, the court must use the terms and definitions under Nevada law. In this case, the district court properly disregarded the parties' definition of joint physical custody in the divorce decree and applied Nevada law in determining that an equal timeshare was appropriate. Although it reached the proper conclusion, the district court abused its discretion by failing to set forth specific findings of fact to support its determination.

Second, we conclude that the district court abused its discretion by modifying the custody timeshare arrangement without making specific findings of fact that the modification was in the child's best interest.

Third, we conclude that the district court abused its discretion by denying Ms. Rivero's motion to modify child support without making any factual findings to justify its decision. We also clarify the circumstances under which a district court may modify a child support order. Under NRS Chapter 125B and our caselaw, a court has authority to modify a child support order upon a finding of a change in circumstances since the prior order. Also, in accordance with the Family Law Section's suggestion, we withdraw the *Rivero* formula for calculating child support.

Fourth, we conclude that the district court judge properly refused to recuse herself, and the chief judge properly denied Ms. Rivero's motion for disqualification. The record contains no evidence that the district court judge had personal bias against either of the parties.

Fifth and finally, we conclude that the district court abused its discretion by awarding Mr. Rivero attorney fees as a sanction for Ms.

Rivero's disqualification motion because the district court made no determination whether the motion was frivolous, and no evidence supports the sanction.

## FACTS AND PROCEDURAL HISTORY

Ms. Rivero filed a complaint for divorce, and the parties eventually reached a settlement. The district court entered a divorce decree incorporating the parties' agreement. The parties agreed to joint physical custody of the child, with Ms. Rivero having physical custody five days each week and Mr. Rivero having physical custody for the remaining two days. The divorce decree also reflected the parties' agreement that neither party was obligated to pay child support.

Less than two months after entry of the divorce decree, Ms. Rivero moved the court to modify the decree by awarding her child support. The district court dismissed her motion. Less than one year later, Ms. Rivero moved the district court for primary physical custody and child support. She alleged that Mr. Rivero did not spend time with the child, that instead his elderly mother took care of the child, and that he did not have suitable living accommodations for the child. Ms. Rivero also argued that she had de facto primary custody because she cared for the child most of the time. Mr. Rivero countered that Ms. Rivero denied him visitation unless he provided food, clothes, and money and denied him overnight visitation once he became engaged to another woman. Mr. Rivero requested that the district court enforce the 5/2 timeshare in the divorce decree, or, alternatively, order a 50/50 timeshare.

The district court held a custody hearing, during which the parties presented contradictory testimony regarding how much time Mr. Rivero actually spent with the child. The district court ruled that the matter did not warrant an evidentiary hearing. The district court further found that the use of the term joint physical custody in the divorce decree did not accurately reflect the timeshare arrangement that the parties were actually practicing, in which Ms. Rivero seemed to have physical custody most of the time. As a result, the court denied Ms. Rivero's motion for child support, found that the parties had joint physical custody, and ordered the parties to mediation to establish a more equal timeshare plan to reflect a joint physical custody arrangement.

After the mediation, but before the next district court hearing, Ms. Rivero served a subpoena on Mr. Rivero's employer for his employment records. The district court granted Mr. Rivero's motion to quash the subpoena, explaining that under the divorce decree, each party had joint physical custody, neither party owed child support, and the only pending issue was whether the parties could agree on a timeshare plan. Ms. Rivero then argued that the district court should reopen the child support issue and allow relevant discovery.

When the district court refused, Ms. Rivero requested that the district court judge recuse herself. The district court judge denied the request. Ms. Rivero then moved to disqualify the district court judge, alleging that the judge did not seriously consider the facts or the law because she was biased based on the parties' physical appearance. Mr. Rivero opposed the motion and moved for attorney fees. The district court judge submitted an affidavit in which she swore that she was unbiased. After considering Ms. Rivero's motion to disqualify the district court judge, the supporting affidavits, and Mr. Rivero's opposition, the chief judge denied the motion. She did not conduct a hearing, and Ms. Rivero did not file a reply. The chief judge concluded that Ms. Rivero's claims appeared to rely on "prior adverse rulings of the judge" and that "[r]ulings and actions of a judge during the course of official judicial proceedings do not establish legally cognizable grounds for disqualification." Thus, the chief judge found that Ms. Rivero's motion was without merit.

At a subsequent hearing, the district court granted Mr. Rivero's motion for attorney fees, noting that Ms. Rivero's disqualification motion was without merit.

During the same hearing, the district court also addressed the custody timeshare arrangement because the parties had been unable to reach an agreement in mediation. Although the divorce decree provided Ms. Rivero with custody five days each week and Mr. Rivero with custody two days each week, the district court concluded that the parties actually intended an equal timeshare. The district court noted that it was "just trying to find a middle ground" between what the divorce decree provided and what the parties actually wanted regarding a custody timeshare. Further, the court found that the decree's order for joint physical custody was inconsistent with the decree's timeshare arrangement because the decree's five-day, two-day timeshare did not constitute joint physical custody. In its order, the district court concluded that the parties intended joint physical custody and ordered an equal timeshare.

The district court found that Ms. Rivero did not have de facto primary physical custody. Therefore, the court determined that an evidentiary hearing was unnecessary because it was not changing primary custody to joint custody, but was modifying a joint physical custody arrangement.

Ms. Rivero appeals, challenging the district court's order denying her motion for child support, the order denying her motion to disqualify the district court judge, and the order modifying the custody timeshare and awarding Mr. Rivero attorney fees.[1]

---

[1]Given the importance of the definition of joint physical custody, this court invited the Family Law Section of the Nevada State Bar (Family Law Section) to file an amicus curiae brief regarding the issue.

## DISCUSSION

In order to clarify the definition of joint physical custody, we first address the definition of legal custody. Physical and legal custody involve separate legal rights and control separate factual scenarios. Therefore, we discuss both legal and physical custody to clarify the distinctions.

After defining both joint physical custody and primary physical custody, we apply those definitions to the issues on appeal. These issues include the district court's custody modification and its denial of Ms. Rivero's motion to modify child support.

Finally, we address Ms. Rivero's motions for recusal and disqualification, and the district court's award of attorney fees to Mr. Rivero arising from those motions.

The Family Law Section requests that this court define all types of legal and physical custody to create a continuum in which it is clear where one type of custody ends and another begins. It argues that such definitions will provide much needed clarity and certainty in child custody law. Our discussion of child custody involves two distinct components of custody: legal custody and physical custody. The term "custody" is often used as a single legal concept, creating ambiguity. NRS 125.460, NRS 125.490 (using the term "joint custody"). To emphasize the distinctions between these two types of custody and to provide clarity, we separately define legal custody, including joint and sole legal custody, and then we define physical custody, including joint physical and primary physical custody.

### I. *Legal custody*

Legal custody involves having basic legal responsibility for a child and making major decisions regarding the child, including the child's health, education, and religious upbringing. *Mack v. Ashlock*, 112 Nev. 1062, 1067, 921 P.2d 1258, 1262 (1996) (SHEARING, J., concurring); Hearing on S.B. 188 Before the Senate Judiciary Comm., 61st Leg. (Nev., Feb. 12, 1981). Sole legal custody vests this right with one parent, while joint legal custody vests this right with both parents. *Mack*, 112 Nev. at 1067, 921 P.2d at 1262 (SHEARING, J., concurring); Cal. Fam. Code §§ 3003, 3006 (West 2004)[2] (defining sole and joint legal custody). Joint legal custody requires that the parents be able to cooperate, communicate, and compromise to act in the best interest of the child. *See Mosley v. Figli-*

---

[2]The Nevada Legislature relied on California family law statutes in adopting NRS 125.460 and 125.490, regarding joint custody. Hearing on S.B. 188 Before the Senate Judiciary Comm., 61st Leg. (Nev., Feb. 12, 1981). Although out-of-state law is not controlling, we look to it as instructive and persuasive. As always, even if this court relies on out-of-state law, Nevada law still controls in interpreting the decisions of this court.

*uzzi*, 113 Nev. 51, 60-61, 930 P.2d 1110, 1116 (1997) (stating that if disagreement between parents affects the welfare of the child, it could defeat the presumption that joint custody is in the best interest of the child and warrant modifying a joint physical custody order); Hearing on S.B. 188 Before the Assembly Judiciary Comm., 61st Leg. (Nev., Apr. 2, 1981) (discussing that joint legal custody requires agreement between the parents). In a joint legal custody situation, the parents must consult with each other to make major decisions regarding the child's upbringing, while the parent with whom the child is residing at that time usually makes minor day-to-day decisions. *See Mack*, 112 Nev. at 1067, 921 P.2d at 1262 (SHEARING, J., concurring) (discussing that the parents can bring unresolved disputes before the court); Hearing on S.B. 188 Before the Senate Judiciary Comm., 61st Leg. (Nev., Feb. 12, 1981) (comments of Senator Wagner and Senator Ashworth) (discussing that both parents are involved with making major decisions regarding the children, and if they cannot agree, the courts will settle their disputes); *Fenwick v. Fenwick*, 114 S.W.3d 767, 777-78 (Ky. 2003) (explaining that in a joint legal custody arrangement, the parents confer on all major decisions, but the parent with whom the child is residing makes the minor day-to-day decisions), *superseded by statute on other grounds as stated in Fowler v. Sowers*, 151 S.W.3d 357, 359 (Ky. Ct. App. 2004), *overruled on other grounds by Frances v. Frances*, 266 S.W.3d 754, 756-57 (Ky. 2008), *and Pennington v. Marcum*, 266 S.W.3d 759, 768 (Ky. 2008).

Joint legal custody can exist regardless of the physical custody arrangements of the parties. NRS 125.490(2); *Mack*, 112 Nev. at 1067, 921 P.2d at 1262 (SHEARING, J., concurring). Also, the parents need not have equal decision-making power in a joint legal custody situation. *Fenwick*, 114 S.W.3d at 776. For example, one parent may have decision-making authority regarding certain areas or activities of the child's life, such as education or healthcare. *Id.* If the parents in a joint legal custody situation reach an impasse and are unable to agree on a decision, then the parties may appear before the court "on an equal footing" to have the court decide what is in the best interest of the child. *Mack*, 112 Nev. at 1067, 921 P.2d at 1262 (SHEARING, J., concurring); *Fenwick*, 114 S.W.3d at 777 n.24.

## II. *Physical custody*

Physical custody involves the time that a child physically spends in the care of a parent. During this time, the child resides with the parent and that parent provides supervision for the child and makes

the day-to-day decisions regarding the child.[3] Parents can share joint physical custody, or one parent may have primary physical custody while the other parent may have visitation rights. *See Ellis v. Carucci*, 123 Nev. 145, 147, 161 P.3d 239, 240 (2007) (describing the mother as having primary physical custody and the father as having liberal visitation); *Barbagallo v. Barbagallo*, 105 Nev. 546, 549, 779 P.2d 532, 534 (1989) (discussing primary and secondary custodians); Cal. Fam. Code §§ 3004, 3007 (West 2004) (defining joint and sole physical custody).

The type of physical custody arrangement is particularly important in three situations. First, it determines the standard for modifying physical custody.[4] Second, it requires a specific procedure if a parent wants to move out of state with the child. *Potter v. Potter*, 121 Nev. 613, 618, 119 P.3d 1246, 1249 (2005). Third, the type of physical custody arrangement affects the child support award. *Barbagallo*, 105 Nev. at 549, 779 P.2d at 534. Because the physical custody arrangement is crucial in making these determinations, the district courts need clear custody definitions in order to evaluate the true nature of parties' agreements. Absent direction from the Legislature, we define joint physical custody and primary physical custody in light of existing Nevada law.

## A. *Joint physical custody*

Ms. Rivero and the Family Law Section assert that this court should clarify the definition of joint physical custody to determine whether it requires a specific timeshare agreement. The Family Law Section suggests that we define joint physical custody by requiring

---

[3]*See* Idaho Code Ann. § 32-717B(2) (2006) (discussing joint physical custody regarding the "time in which a child resides with or is under the care and supervision of" the parties); Iowa Code Ann. § 598.1(4) (West 2001) (discussing joint physical custody as involving shared parenting time, maintaining a home for the child, and physical care rights); *Taylor v. Taylor*, 508 A.2d 964, 967 (Md. 1986) (defining physical custody as involving providing a home and making day-to-day decisions regarding the child); Mass. Ann. Laws ch. 208, § 31 (LexisNexis 2003) (describing shared physical custody as involving the child residing with and being under the supervision of each parent); Mo. Ann. Stat. § 452.375(1)(3) (West 2003) (discussing residence and supervision in the context of joint legal custody); 23 Pa. Cons. Stat. Ann. § 5302 (West 2001) (defining physical custody as "[t]he actual physical possession and control of a child").

[4]The court may modify *joint* physical custody if it is in the best interest of the child. NRS 125.510(2); *Potter v. Potter*, 121 Nev. 613, 618, 119 P.3d 1246, 1249 (2005). However, to modify a *primary* physical custody arrangement, the court must find that it is in the best interest of the child and that there has been a substantial change in circumstances affecting the welfare of the child. *Ellis*, 123 Nev. at 150, 161 P.3d at 242.

that each parent have physical custody of the child at least 40 percent of the time. In accordance with this suggestion, and for the reasons set forth below, we clarify Nevada's definition of joint physical custody pursuant to Nevada statutes and caselaw and create parameters to clarify which timeshare arrangements qualify as joint physical custody.

Although Nevada law suggests that joint physical custody approximates an equal timeshare, to date, neither the Nevada Legislature nor this court have explicitly defined joint physical custody or specified whether a specific timeshare is required for a joint physical custody arrangement. *See Potter*, 121 Nev. at 619 n.16, 119 P.3d at 1250 n.16 (declining to address the issue of whether joint physical custody requires a particular timeshare); *Barbagallo*, 105 Nev. at 548, 779 P.2d at 534 (noting that, in 1987, when it enacted the child support formula, the Legislature declined to define primary physical custody according to a particular timeshare). In fact, even the terminology is inconsistent. This court has used the following phrases to describe situations where both parents have physical custody: shared custodial arrangements, joint physical custody, equal physical custody, shared physical custody, and joint and shared custody. *See Wesley v. Foster*, 119 Nev. 110, 113, 65 P.3d 251, 253 (2003) (discussing shared custodial arrangements); *Wright v. Osburn*, 114 Nev. 1367, 1368, 970 P.2d 1071, 1072 (1998) (using the terms joint physical custody, equal physical custody, and shared physical custody); *Barbagallo*, 105 Nev. at 547-48, 779 P.2d at 533-34 (utilizing the terms joint or shared custody). Given the various terms used to describe joint physical custody and the lack of a precise definition and timeshare requirement, we now define joint physical custody and the timeshare required for such arrangements.

### 1. *Defining joint physical custody*

''In determining custody of a minor child . . . the sole consideration of the court is the best interest of the child.'' NRS 125.480(1). The Legislature created a presumption that joint legal and joint physical custody are in the best interest of the child if the parents so agree. NRS 125.490(1). The policy of Nevada is to advance the child's best interest by ensuring that after divorce ''minor children have frequent associations and a continuing relationship with both parents . . . and [t]o encourage such parents to share the rights and responsibilities of child rearing.'' NRS 125.460. To further this policy, the Legislature adopted the statutes that now comprise NRS Chapter 125 to educate and encourage parents regarding joint custody arrangements, encourage parents to cooperate and work out a custody arrangement before going to court to finalize the divorce, ensure the healthiest psychological arrangement for children, and minimize the adversarial, winner-take-all approach to custody dis-

putes. *Mosley*, 113 Nev. at 63-64, 930 P.2d at 1118; Hearing on S.B. 188 Before the Senate Judiciary Comm., 61st Leg. (Nev., Feb. 12, 1981) (Senator Wagner's comments) (discussing parents reaching an agreement before coming to court); Hearing on S.B. 188 Before the Assembly Judiciary Comm., 61st Leg. (Nev., Apr. 2, 1981) (summary of supporting information) (enumerating flaws in the old statute).

Although NRS Chapter 125 does not contain a definition of joint physical custody, the legislative history regarding NRS 125.490 reveals the Legislature's understanding of its meaning. Joint physical custody is "[a]warding custody of the minor child or children to BOTH PARENTS and providing that physical custody shall be shared by the parents in such a way to ensure the child or children of frequent associations and a continuing relationship with both parents."[5] Hearing on S.B. 188 Before the Assembly Judiciary Comm., 61st Leg. (Nev., Apr. 2, 1981) (summary of supporting information). This does not include divided or alternating custody, where each parent acts as a sole custodial parent at different times, or split custody, where one parent is awarded sole custody of one or more of the children and the other parent is awarded sole custody of one or more of the children. *Id.*

### 2. *The timeshare required for joint physical custody*

The question then remains, what constitutes joint physical custody to ensure the child frequent associations and a continuing relationship with both parents? Our law presumes that joint physical custody approximates a 50/50 timeshare. *See Wesley*, 119 Nev. at 112-13, 65 P.3d at 252-53 (discussing shared custody arrangements and equal timeshare); *Wright*, 114 Nev. at 1368, 970 P.2d at 1071-72 (discussing joint physical custody and equal timeshare). This court has noted that the public policy, as stated in NRS 125.490, is that joint custody is presumably in the best interest of the child if the parents agree to it and that this policy encourages *equally* shared parental responsibilities. *Mosley*, 113 Nev. at 60-61 & n.4, 930 P.2d at 1116 & n.4.

Although joint physical custody must approximate an equal timeshare, given the variations inherent in child rearing, such as school

---

[5]Other states define joint physical custody similarly, focusing on the child's continuing contact and relationship with both parents. Cal. Fam. Code § 3004 (West 2004); Haw. Rev. Stat. § 571-46.1 (2006); Idaho Code Ann. § 32-717B(2) (2006); Mass. Ann. Laws ch. 208, § 31 (LexisNexis 2003); Miss. Code Ann. § 93-5-24(5)(c) (2004); Mo. Ann. Stat. § 452.375(1)(3) (West 2003); 23 Pa. Cons. Stat. Ann. § 5302 (West 2001); *Mamolen v. Mamolen*, 788 A.2d 795, 799 (N.J. Super. Ct. App. Div. 2002).

schedules, sports, vacations, and parents' work schedules, to name a few, an exactly equal timeshare is not always possible. Therefore, there must be some flexibility in the timeshare requirement. The question then becomes, when does a timeshare become so unequal that it is no longer joint physical custody? Courts have grappled with this question and come to different conclusions. For example, this court has described a situation where the children live with one parent and the other parent has every-other-weekend visitation as primary physical custody with visitation, even when primary custody was changed for one month out of the year and the other parent would revert back to weekend visitations. *Metz v. Metz*, 120 Nev. 786, 788-89, 101 P.3d 779, 781 (2004). In *Wright*, 114 Nev. at 1368, 970 P.2d at 1071, this court described an arrangement where the parents had the children on a rotating weekly basis as joint physical custody.

Similarly, the California Court of Appeal has held that "[physical] custody one day per week and alternate weekends constitutes liberal visitation, not joint [physical] custody." *People v. Mehaisin*, 124 Cal. Rptr. 2d 683, 687 (Ct. App. 2002). Likewise, when the mother has temporary custody and the father has visitation for a one-month period, the parties do not have joint physical custody. *Id*. at 685, 687. Rather, the father has a period of visitation, and the mother has sole physical custody thereafter. *Id*. at 687. Just as Nevada has defined joint physical custody as requiring an equal timeshare, the California Court of Appeal noted that joint physical custody includes situations in which the children split their time living with each parent and spend nearly equal time with each parent. *Id*. Some jurisdictions have adopted bright-line rules regarding the timeshare requirements for joint physical custody so that anything too far removed from a 50/50 timeshare cannot be considered joint physical custody.[6]

▄▄▄▄▄▄ ▄▄ ▄▄

We conclude that, consistent with legislative intent and our caselaw, in joint physical custody arrangements, the timeshare must be approximately 50/50. However, absent legislative direction regarding how far removed from 50/50 a timeshare may be and still constitute joint physical custody, the law remains unclear. Therefore, to approximate an equal timeshare but allow for necessary flexibility, we hold that each parent must have physical custody of the child

---

[6]*See, e.g.*, Okla. Stat. Ann. tit. 43, § 118(10) (West 2001) (requiring each parent to have physical custody for more than 120 nights each year for shared physical custody); Tenn. Code Ann. § 36-6-402(4) (2005) (defining "primary residential parent" as "the parent with whom the child resides more than 50 percent (50%) of the time"); *Miller v. Miller*, 568 S.E.2d 914, 918 (N.C. Ct. App. 2002) (explaining that joint physical custody requires that each parent have custody for at least one-third of the year).

at least 40 percent of the time to constitute joint physical custody. We acknowledge that the Legislature is free to alter the timeshare required for joint physical custody, but we adopt this guideline to provide needed clarity for the district courts. This guideline ensures frequent associations and a continuing relationship with both parents. If a parent does not have physical custody of the child at least 40 percent of the time, then the arrangement is one of primary physical custody with visitation. We now address how the courts should calculate the 40-percent timeshare.

We note that our dissenting colleague's reliance on *Barbagallo v. Barbagallo*, 105 Nev. 546, 779 P.2d 534 (1989), for the proposition that this court should not adopt the 40-percent timeshare requirement, is misplaced. In *Barbagallo*, this court noted that the Legislature had considered adopting specific timeshare requirements for determining which parent would pay child support in a joint physical custody arrangement but declined to do so. *Id.* at 548, 779 P.2d at 534. Thus, *Barbagallo* was declining to mathematically define child custody for the purpose of creating new child support calculations. Notably, this opinion does not alter or adopt any child support formulas, but rather reaffirms the child support calculations in *Barbagallo*, 105 Nev. 546, 779 P.2d 534, and *Wright*, 114 Nev. 1367, 970 P.2d 1071, which were in effect before this case. Prior to this opinion, *Barbagallo*, 105 Nev. at 549, 779 P.2d at 534-35, established how to calculate child support when one parent has primary physical custody, and *Wright*, 114 Nev. at 1368-69, 970 P.2d at 1072, established the calculation when the parents share joint physical custody. This opinion clarifies what arrangements constitute primary and joint physical custody so that parties, attorneys, and district courts readily know which child support calculation to apply. Thus, this opinion does not adopt new custody definitions for the purpose of formulating new child support calculations. Rather, it is based on this court's precedent and clarifies custody definitions so that courts can fairly and consistently apply the *Barbagallo* and *Wright* formulas that predated this opinion.

Our dissenting colleague also argues that the Legislature should be creating the custody definitions set out in this opinion. The issues in this case and the Family Law Section's amicus curiae brief demonstrate that there are gaps in the law. However, despite these gaps, attorneys must still advise their clients, public policy still favors settlement, and parties are still entitled to consistent and fair resolution of their disputes. To resolve the issues on appeal and ensure consistent and fair application of the law by district courts, this court has attempted to fill some of these gaps by defining the various types of child custody.

This court has previously created predictability for litigants to fill such a gap in the law in *Malmquist v. Malmquist*, 106 Nev. 231, 792

P.2d 372 (1990). In *Malmquist*, this court adopted a standard formula for district courts to apply "to apportion the community and separate property shares in the *appreciation* of a separate property residence obtained with a separate property loan prior to marriage." *Id.* at 238, 792 P.2d at 376. This court noted that although the district courts can make equitable determinations in individual cases, "the aggregate result becomes unfair when similarly situated persons receive disparate returns on their home investments." *Id.* The same reasoning applies here. District courts can use their discretion to make fair determinations in individual child custody cases. However, this becomes unfair when different parties similarly situated obtain different results. Such unreliable outcomes also make it difficult for attorneys to advise their clients and for parties to settle their disputes. Therefore, the timeshare requirement that this opinion establishes is both necessary to ensure consistent and fair application of the law and proper under this court's precedent.

### 3. *Calculating the timeshare*

The district court should calculate the time during which a party has physical custody of a child over one calendar year. Each parent must have physical custody of the child at least 40 percent of the time, which is 146 days per year. Calculating the timeshare over a one-year period allows the court to consider weekly arrangements as well as any deviations from those arrangements such as emergencies, holidays, and summer vacation. In calculating the time during which a party has physical custody of the child, the district court should look at the number of days during which a party provided supervision of the child, the child resided with the party, and during which the party made the day-to-day decisions regarding the child. The district court should not focus on, for example, the exact number of hours the child was in the care of the parent, whether the child was sleeping, or whether the child was in the care of a third-party caregiver or spent time with a friend or relative during the period of time in question.

Therefore, absent evidence that joint physical custody is not in the best interest of the child, if each parent has physical custody of the child at least 40 percent of the time, then the arrangement is one of joint physical custody.

### B. *Defining primary physical custody*

We now discuss primary physical custody to contrast it with joint physical custody and to clarify its definition. A parent has primary physical custody when he or she has physical custody of the child subject to the district court's power to award the other parent visi-

tation rights. *See, e.g., Ellis*, 123 Nev. at 147, 161 P.3d at 240. The focus of primary physical custody is the child's residence. The party with primary physical custody is the party that has the primary responsibility for maintaining a home for the child and providing for the child's basic needs. *See Barbagallo*, 105 Nev. at 549, 779 P.2d at 534 (discussing primary custodians and custodial parents in the context of child support); *see* Tenn. Code Ann. § 36-6-402(4) (2005) (defining "primary residential parent" as the parent with whom the child resides for more than 50 percent of the time). This focus on residency is consistent with NRS 125C.010, which requires that a court, when ordering visitation, specify the "habitual residence" of the child. Thus, the determination of who has primary physical custody revolves around where the child resides.

Primary physical custody arrangements may encompass a wide array of circumstances. As discussed above, if a parent has physical custody less than 40 percent of the time, then that parent has visitation rights and the other parent has primary physical custody. Likewise, a primary physical custody arrangement could also encompass a situation where one party has primary physical custody and the other party has limited or no visitation. *See Metz*, 120 Nev. at 788-89, 101 P.3d at 781 (describing a primary physical custody situation where the nonprimary physical custodian had visitation every other weekend).

### III. *Custody modification*

Having determined what constitutes joint physical custody and primary physical custody, we now consider whether the district court abused its discretion in determining that the parties had joint physical custody when their divorce decree described a 5/2 custodial timeshare but labeled the arrangement as joint physical custody.

This court reviews the district court's decisions regarding custody, including visitation schedules, for an abuse of discretion. *Wallace v. Wallace*, 112 Nev. 1015, 1019, 922 P.2d 541, 543 (1996). District courts have broad discretion in child custody matters, but substantial evidence must support the court's findings. *Ellis*, 123 Nev. at 149, 161 P.3d at 241-42. Substantial evidence "is evidence that a reasonable person may accept as adequate to sustain a judgment." *Id.* at 149, 161 P.3d at 242.

Ms. Rivero contends that the district court abused its discretion by construing the term "joint physical custody" in the divorce decree to mean an equal timeshare, when the parties defined joint physical custody in the divorce decree as a 5/2 timeshare. She also argues that the district court abused its discretion in finding that she and

Mr. Rivero had joint physical custody of their child because she asserts that she had de facto primary physical custody of the child.

We conclude that the district court properly disregarded the parties' definition of joint physical custody because the district court must apply Nevada's physical custody definition—not the parties' definition. We also conclude that the district court abused its discretion by not making specific findings of fact to support its decision that the custody arrangement constituted joint physical custody and that modification of the divorce decree was in the best interest of the child.

### A. *Custody agreements*

We now address the modification of custody agreements. We conclude that the terms of the parties' custody agreement will control except when the parties move the court to modify the custody arrangement. In custody modification cases, the court must use the terms and definitions provided under Nevada law.[7]

Parties are free to contract, and the courts will enforce their contracts if they are not unconscionable, illegal, or in violation of public policy. *See D.R. Horton, Inc. v. Green*, 120 Nev. 549, 558, 96 P.3d 1159, 1165 (2004) (citing unconscionablility as a limitation on enforceability of a contract); *NAD, Inc. v. Dist. Ct.*, 115 Nev. 71, 77, 976 P.2d 994, 997 (1999) (stating "parties are free to contract in any lawful matter"); *Miller v. A & R Joint Venture*, 97 Nev. 580, 582, 636 P.2d 277, 278 (1981) (discussing public policy as a limitation on enforceability of a contract). Therefore, parties are free to agree to child custody arrangements and those agreements are enforceable if they are not unconscionable, illegal, or in violation of public policy. However, when modifying child custody, the district courts must apply Nevada child custody law, including NRS Chapter 125C and caselaw. NRS 125.510(2) (discussing modification of a joint physical custody order); *Ellis*, 123 Nev. at 150, 161 P.3d at 242 (discussing modification of a primary physical custody order). Therefore, once parties move the court to modify an existing child custody agreement, the court must use the terms and definitions provided under Nevada law, and the parties' definitions no longer control. In this case, Ms. Rivero moved the district court to modify the decree. Therefore, the district court properly disregarded the parties' definition of joint physical custody.

---

[7]Ms. Rivero also challenges the district court's decision not to hold an evidentiary hearing regarding child custody. Because we reverse and remand on the custody issue on other grounds, we do not reach this argument.

B. *The district court's determination that the parties' custody arrangement was joint physical custody and its modification of the custody arrangement*

When considering whether to modify a physical custody agreement, the district court must first determine what type of physical custody arrangement exists because different tests apply depending on the district court's determination. A modification to a joint physical custody arrangement is appropriate if it is in the child's best interest. NRS 125.510(2). In contrast, a modification to a primary physical custody arrangement is appropriate when there is a substantial change in the circumstances affecting the child and the modification serves the child's best interest. *Ellis*, 123 Nev. at 150, 161 P.3d at 242.

Under the definition of joint physical custody discussed above, each parent must have physical custody of the child at least 40 percent of the time. This would be approximately three days each week. Therefore, the district court properly found that the 5/2 timeshare included in the parties' divorce decree does not constitute joint physical custody. The district court must then look at the actual physical custody timeshare that the parties were exercising to determine what custody arrangement is in effect.

The district court summarily determined that Mr. and Ms. Rivero shared custody on approximately an equal time basis. Based on this finding, the district court determined that it was modifying a joint physical custody arrangement, and therefore, Ms. Rivero, as the moving party, had the burden to show that modifying the custody arrangement was in the child's best interest. NRS 125.510(2); *Truax v. Truax*, 110 Nev. 437, 438-39, 874 P.2d 10, 11 (1994). However, the district court did not make findings of fact supported by substantial evidence to support its determination that the custody arrangement was, in fact, joint physical custody. *Ellis*, 123 Nev. at 149, 161 P.3d at 241-42. Therefore, this decision was an abuse of discretion.

Moreover, the district court abused its discretion by modifying the custody agreement to reflect a 50/50 timeshare without making specific findings of fact demonstrating that the modification was in the best interest of the child.

Specific factual findings are crucial to enforce or modify a custody order and for appellate review. Accordingly, on remand, the district court must evaluate the true nature of the custodial arrangement, pursuant to the definition of joint physical custody described above, by evaluating the arrangement the parties are exercising in practice, regardless of any contrary language in the divorce decree. The district court shall then apply the appropriate test for determining whether to modify the custody arrangement and make express findings supporting its determination.

IV. *Child support*

Ms. Rivero argues that the district court erred in denying her motion for child support by not reviewing the parties' affidavits of financial condition and noting the discrepancies in the parties' incomes.[8] We conclude that the district court abused its discretion in denying Ms. Rivero's motion for child support because it did not make specific findings of fact supported by substantial evidence. In reaching our conclusion, we first address the circumstances under which the district court may modify a child support order and discuss the calculation of child support in primary physical custody and joint physical custody arrangements.

A. *Modifying a child support order*

An ambiguity has arisen in our caselaw regarding when the district court has the authority to modify a child support order. Therefore, we take this opportunity to clarify that the district court only has authority to modify a child support order upon finding that there has been a change in circumstances since the entry of the order and the modification is in the best interest of the child. In so doing, we look to NRS Chapter 125B and our caselaw.

1. *Modification of a child support order requires a change in circumstances*

As with custody cases, the requirement of changed circumstances in child support cases prevents parties "[from filing] immediate, repetitive, serial motions until the right circumstances or the right judge allows them to achieve a different result, based on essentially the same facts." *Ellis*, 123 Nev. at 151, 161 P.3d at 243 (internal quotations omitted). Therefore, a court cannot modify a child support order if the predicate facts upon which the court issued the order are substantially unchanged. *Mosley v. Figliuzzi*, 113 Nev. 51, 58-59, 930 P.2d 1110, 1114-15 (1997) (discussing custody orders). Also, the modification must be in the best interest of the child. NRS 125B.145(2)(b).

The Legislature has specified when a court will review a child support order. A court must review a support order, if requested by a party or legal guardian, every three years. NRS 125B.145(1)(b). The court may also review a support order upon a showing of changed circumstances. NRS 125B.145. Because the term "may" is discretionary, the district court has discretion to review a support

---

[8]Ms. Rivero also challenges the district court's denial of her discovery of Mr. Rivero's employment records for purposes of calculating child support. Because we reverse and remand on the support issue on other grounds, we do not reach this argument.

order based on changed circumstances but is not required to do so. *Fourchier v. McNeil Const. Co.*, 68 Nev. 109, 122, 227 P.2d 429, 435 (1951). However, a change of 20 percent or more in the obligor parent's gross monthly income requires the court to review the support order. NRS 125B.145(4). Although these provisions indicate when the review of a support order is mandatory or discretionary, they do not require the court to modify the order upon the basis of these mandatory or discretionary reviews.

The district court has authority to modify a support order if there has been a factual or legal change in circumstances since it entered the order. Since its enactment of the statutes that today comprise NRS Chapter 125B, the Legislature has allowed modification of child support orders upon changed circumstances. 1987 Nev. Stat., ch. 813, § 3, at 2267. Nevada law also requires the district court, when adjusting the child support amount, to consider the factors in NRS 125B.070 and NRS 125B.080(9). 1987 Nev. Stat., ch. 813, § 3, at 2268. We have specified that even equitable adjustments to support awards must be based on the NRS 125B.080(9) factors. *Khaldy v. Khaldy*, 111 Nev. 374, 376-77, 892 P.2d 584, 585 (1995). Therefore, when considering a modification motion, the district court will always consider the same factual circumstances—those specified in NRS 125B.070 and 125B.080(9). In evaluating whether the factual circumstances have changed, the district court may consider facts that were previously unknown to the court or a party, even if the facts predate the support order at issue. *See Castle v. Simmons*, 120 Nev. 98, 103-06, 86 P.3d 1042, 1046-48 (2004) (holding that a parent may present evidence of child abuse that occurred before the entry of the last child custody order because of the presumption that physical custody with an abusive parent is not in the best interest of the child). Thus, modification is not warranted unless a change has occurred regarding the factual considerations under NRS 125B.070 or 125B.080(9). *See Mosley*, 113 Nev. at 58, 930 P.2d at 1114 (requiring a substantial change in circumstances to modify a joint custody order).

The Legislature has specified other scenarios under which a court may modify a support order. These scenarios are examples of changes in circumstances that warrant modification of a support order. For example, inaccurate or falsified financial information that results in an inappropriate support award is a ground for modification of the award. NRS 125B.080(2). After a child support order has been entered, any subsequent modification must be based on changed circumstances except (1) pursuant to a three-year review under NRS 125B.145(1), (2) pursuant to mandatory annual adjustments of the statutory maximums under NRS 125B.070(3), or (3) pursuant to adjustments by the Division of Welfare and Supportive Services under NRS 425.450. NRS 125B.080(3).

Under NRS 125B.145(1), the district court must review the support order if three years have passed since its entry. The district court must then consider the best interests of the child and determine whether it is appropriate to modify the order. NRS 125B.145(2)(b). Modification is appropriate if there has been a factual or legal change in circumstances since the district court entered the support order. Upon a finding of such a change, the district court can then modify the order consistent with NRS 125B.070 and 125B.080. *Id.* Therefore, although a party need not show changed circumstances for the district court to review a support order after three years, changed circumstances are still required for the district court to modify the order.

Each of these three situations, which the Legislature has specified as warranting modification of a support order, is grounded in a change in a party's factual circumstances. NRS 125B.145(4) expressly states that the district court may review a child support order "at any time on the basis of changed circumstances." Specifically, the new child support order must be supported by factual findings that a change in support is in the child's best interest and the modification or adjustment of the award must comply with the requirements of NRS 125B.070 and NRS 125B.080. *See* NRS 125B.145(2)(b). Moreover, under NRS 125B.080(9), the court is mandated to consider 12 different factors when considering whether to adjust a child support award, thereby requiring the moving party to show a change in factual circumstances that may justify a modification or adjustment to an existing child support order.

### 2. *Scott v. Scott*

Ms. Rivero cites to *Scott v. Scott*, 107 Nev. 837, 840, 822 P.2d 654, 656 (1991), for the proposition that a court can modify a child support order according to the statutory formula without a finding of changed circumstances. In *Scott*, this court stated that "[a] child support award can be modified in accordance with the statutory formula, regardless of a finding of changed circumstances." 107 Nev. at 840, 822 P.2d at 656 (relying on *Parkinson v. Parkinson*, 106 Nev. 481, 483 & n.1, 796 P.2d 229, 231 & n.1 (1990)). As shown above, a change in circumstances is required to modify an existing child support order. Thus, the statement made in *Scott*, that changed circumstances is not required, is incorrect. Therefore, to the extent that *Scott* conflicts with this clarification, we disaffirm that case on that point for two reasons.

First, *Scott*'s holding was based on changed factual circumstances. In *Scott*, the custodial parent moved the district court for modification of the child support order in accordance with NRS 125B.070, seeking the statutory maximum of the noncustodial parent's gross monthly income, including any overtime pay. 107 Nev. at 839, 822

P.2d at 655. Six months later, the district court modified the child support order, finding that the custodial parent's loss of a roommate constituted a "substantial change of circumstances." *Id.* The district court, however, deviated down from the statutory maximum based on the fact that the noncustodial parent had remarried and was responsible for two additional children. *Id.* at 840, 822 P.2d at 656. The noncustodial parent appealed on the basis that there was not a "substantial change of circumstances justifying modification of the child support award." *Id.* at 840, 822 P.2d at 656.

Without explaining that a custodial parent has the right to obtain child support in accordance with the statutory formula, as noted in footnote 1 in *Parkinson*, 106 Nev. at 483, 796 P.2d at 231, the *Scott* court expanded this rule to suggest that any child support award can be modified regardless of a change in circumstances. 107 Nev. at 840, 822 P.2d at 656. The *Scott* court, however, went on to consider whether the district court abused its discretion when it deviated from the statutory formula when it considered several factors enumerated in NRS 125B.080(9) to reduce the noncustodial parent's support obligation. *Id.* at 840-41, 822 P.2d at 656. The *Scott* court concluded that the district court did not abuse its discretion, but the rationale is unclear. *Id.* It is unclear whether the *Scott* court determined that the district court properly found a change in circumstances or properly determined child support under NRS 125B.070 and NRS 125B.080(9). However, regardless of the rationale, to the extent that *Scott* suggests that changed circumstances are not necessary to modify a support order, it misstates the law.

Second, in relying on *Parkinson*, the *Scott* court erroneously expanded the comment made in footnote 1 in *Parkinson*, 106 Nev. at 483 & n.1, 796 P.2d at 231 & n.1. In that footnote, the *Parkinson* court mischaracterized the holding in *Perri v. Gubler*, 105 Nev. 687, 782 P.2d 1312 (1989). *Parkinson*, 106 Nev. at 483 & n.1, 796 P.2d at 231 & n.1. In *Perri*, the father had custody of the children and the parties agreed that the mother would not pay child support to the father. 105 Nev. at 688, 782 P.2d 1313. Upon the father's motion, the district court modified the decree to require the mother to pay child support to the father. *Id.* The *Perri* court reversed, concluding that because the father provided inaccurate financial information to the district court, the district court would be unable to find that the father's circumstances had changed to warrant a modification of the support order. *Id.* This court's decision was correct under Nevada caselaw and under the newly amended NRS 125B.080(3), requiring changed circumstances to modify a support order when the parties did not stipulate to the support. 1989 Nev. Stat., ch. 405, § 14, at 859; *see Harris v. Harris*, 95 Nev. 214, 216 & n.2, 591 P.2d 1147, 1148 & n.2 (1979) (interpreting former NRS 125.140(2) as allowing courts to modify child custody and support awards to accommodate changes in circumstances after entry of the order). Although the

*Perri* court did not cite to NRS 125B.080(3), it properly reasoned that because the father had provided inaccurate financial information, he had not adequately proven any changed circumstances warranting modification of the support decree. *Perri*, 105 Nev. at 688, 782 P.2d at 1313.

However, the *Parkinson* court disavowed *Perri* insofar as it required a showing of changed circumstances to modify a support order. *Parkinson*, 106 Nev. at 483 & n.1, 796 P.2d at 231 & n.1. The *Parkinson* court cited to NRS 125B.080(1)(b) and (3) to support this proposition. *Id.* We conclude that the *Parkinson* court misread NRS 125B.080(1)(b) and (3). At the time of the *Parkinson* decision, as it does now, NRS 125B.080(1)(b) required courts to apply the statutory formula regarding any motion to modify child support filed after July 1, 1987. 1989 Nev. Stat., ch. 405, § 14, at 859. NRS 125B.080(3) stated that once a court had established a support order pursuant to the statutory formula, "any subsequent modification of that support must be based upon changed circumstances." 1989 Nev. Stat., ch. 405, § 14, at 859. The plain language of the statute at the time required changed circumstances to modify an existing support order that was properly ordered pursuant to the statutory formula. Thus, we now disaffirm the footnote in *Parkinson*, 106 Nev. at 483 & n.1, 796 P.2d at 231 & n.1, which states a party may seek modification of a support order without changed circumstances. Accordingly, *Scott*'s reliance on this proposition is also erroneous. 107 Nev. at 840, 822 P.2d at 656.

In conclusion, we retreat from *Parkinson* and *Scott* to the extent that they may be read to allow a court to modify an existing child support order without a change in circumstances since the court issued the order.

Having clarified the circumstances under which a district court may modify a child support order, we note that this case is an example of the immediate and repetitive motions that can plague the district court, even after the parties have stipulated to child support. Less than two months after the district court entered the parties' divorce decree, in which they agreed that neither party would receive child support, Ms. Rivero moved the court for child support. Then she did so again, 11 months later. Such constant relitigation of a court order, especially one to which the parties stipulate, is pointless absent a change in the circumstances underlying the initial order.

## B. *Calculating child support*

The Family Law Section suggests that we reformulate the *Rivero* child support formula set forth in our prior opinion in this case. It notes that the formula assumes a parent contributes to the financial support of the child by merely spending time with the child and shifts the focus of custody disputes to child support rather than the best interest of the child. Consistent with these points, we withdraw

the *Rivero* formula and reaffirm the statutory formulas and the formulas under *Barbagallo* and *Wright*. Because joint physical custody requires a near-equal timeshare, we conclude it is unnecessary to utilize a third formula for cases of joint physical custody with an unequal timeshare.

### 1. *Calculating child support in cases of primary physical custody*

In cases where one party has primary physical custody and the other has visitation rights, *Barbagallo v. Barbagallo*, 105 Nev. 546, 779 P.2d 532 (1989), controls. Under these circumstances, the court applies the statutory formulas and the noncustodial parent pays the custodial parent support. *Id.* at 548, 779 P.2d at 534. The court may use the factors under NRS 125B.080(9) to deviate from the formulas. The *Barbagallo* court cited "standard of living and circumstances of the parents" and the "earning capacity of the parents" as the most important of these factors.[9] *Id.* at 551, 779 P.2d at 536. Under the current version of NRS 125B.080, this focus on the financial circumstances of the parties is reflected in several factors, including: "the relative income of both parents," the cost of health care and child care, "[a]ny public assistance paid to support the child," "expenses related to the mother's pregnancy and confinement," visitation transportation costs in some circumstances, and "[a]ny other necessary expenses for the benefit of the child." NRS 125B.080(9). All the other statutory factors, such as the amount of time a parent spends with a child, are of lesser weight. *Barbagallo*, 105 Nev. at 551, 779 P.2d at 536.

We have noted that joint physical custody increases the total cost of raising the child. *Id.* at 549-50, 779 P.2d at 535. As the Family Law Section notes, the amount of time that a parent spends with a child might, but does not necessarily, reduce the cost of raising the child to the custodial parent. *Id.* The amount of time spent with the child, along with the other lesser-weighted factors in NRS 125B.080(9), can serve as a basis for the district court to modify a support award, upon a showing by the secondary custodian that payment of the statutory formula amount would be unfair or unjust given his or her "substantial contributions of a financial or equivalent nature to the support of the child." *Id.* at 552, 779 P.2d at 536. This approach re-

---

[9]While the *Barbagallo* court cited to the NRS 125B.080(8) factors, NRS 125B.080 has since been renumbered such that these factors are now located in NRS 125B.080(9). 1989 Nev. Stat., ch. 405, § 14, at 860.

mains unchanged by the adoption of the new definition of joint physical custody because it only applies to situations in which one party has primary physical custody and the other has visitation rights.

### 2. *Calculating child support in cases of joint physical custody*

In cases where the parties have joint physical custody, the *Wright v. Osburn* formula determines which parent should receive child support. 114 Nev. 1367, 1368-69, 970 P.2d 1071, 1072 (1998). We take this opportunity to note that *Wright* overrules *Barbagallo*'s application of the statutory child support formulas in joint physical custody cases. *Barbagallo* directs the court to identify a primary and secondary custodian and order the secondary custodian to pay the primary custodian child support in accordance with the appropriate formula. 105 Nev. at 549, 779 P.2d at 534-35. This is no longer the law.

Rather, under *Wright*, child support in joint physical custody arrangements is calculated based on the parents' gross incomes. *Id.* at 1368-69, 970 P.2d at 1072. Each parent is obligated to pay a percentage of their income, according to the number of children, as determined by NRS 125B.070(1)(b). The difference between the two support amounts is calculated, and the higher-income parent is obligated to pay the lower-income parent the difference. *Id.* The district court may adjust the resulting amount of child support using the NRS 125B.080(9) factors. *Id.* The purposes of the *Wright* formula are to adjust child support to equalize the child's standard of living between parents and to provide a formula for consistent decisions in similar cases. *Id.*

The *Wright* formula also remains unchanged by the new definition of joint physical custody. When the parties have joint physical custody, as defined above, the *Wright* formula applies, subject to adjustments pursuant to the statutory factors in NRS 125B.080(9). Under the new definition of joint physical custody, there could be a slight disparity in the timeshare. The biggest disparity would be a case in which one party has physical custody of the child 60 percent of the time and the other has physical custody of the child 40 percent of the time. Still, maintaining the lifestyle of the child between the parties' households is the goal of the *Wright* formula, and the financial circumstances of the parties remain the most important factors under NRS 125B.080(9). *Wright*, 114 Nev. at 1368, 970 P.2d at

1072; *Wesley v. Foster*, 119 Nev. 110, 113, 65 P.3d 251, 253 (2003); *Barbagallo*, 105 Nev. at 551, 779 P.2d at 536. Thus, in a joint physical custody situation, if a party seeks a reduction in child support based on the amount of time spent with the child, the party must prove that payment of the full statutory amount of child support is unfair or unjust, given that party's substantial contributions to the child's support. *Barbagallo*, 105 Nev. at 552, 779 P.2d at 536.

### C. *The district court's denial of Ms. Rivero's motion for child support*

Here, in denying Ms. Rivero child support, the district court relied on the divorce decree, in which the parties agreed that neither would receive child support.

This court reviews the district court's decisions regarding child support for an abuse of discretion. *Wallace v. Wallace*, 112 Nev. 1015, 1019, 922 P.2d 541, 543 (1996). Parents have a duty to support their children. NRS 125B.020. When a district court deviates from the statutory child support formula, it must set forth specific findings of fact stating the basis for the deviation and what the support would have been absent the deviation. NRS 125B.080(6). Even if the record reveals the district court's reasoning for the deviation, the court must expressly set forth its findings of fact to support its decision. *Jackson v. Jackson*, 111 Nev. 1551, 1553, 907 P.2d 990, 992 (1995).

In this case, the district court erred by not making specific findings of fact regarding whether Ms. Rivero was entitled to receive child support under NRS Chapter 125B and explaining any deviations from the statutory formulas. Therefore, we reverse the district court's denial of Ms. Rivero's motion for child support. On remand, as discussed above, the district court may only modify the divorce decree upon finding a change in circumstances since the entry of the decree, and must calculate child support pursuant to either *Barbagallo* or *Wright*, as appropriate.

## V. *Ms. Rivero's motions for recusal and disqualification*

Ms. Rivero asserts that the district court abused its discretion when the district court judge refused to recuse herself and when the chief judge denied Ms. Rivero's motion to disqualify the judge. According to Ms. Rivero, the district court abused its discretion in not allowing her to file a reply to Mr. Rivero's opposition to the motion to disqualify and by not permitting her to argue the merits at a hearing. We disagree because Ms. Rivero did not prove legally cogniz-

able grounds supporting an inference of bias, and therefore, summary dismissal of the motion was proper.

This court gives substantial weight to a judge's decision not to recuse herself and will not overturn such a decision absent a clear abuse of discretion. *Goldman v. Bryan*, 104 Nev. 644, 649, 764 P.2d 1296, 1299 (1988), *abrogated on other grounds by Halverson v. Hardcastle*, 123 Nev. 245, 266, 163 P.3d 428, 443 (2007). A judge is presumed to be unbiased, and "the burden is on the party asserting the challenge to establish sufficient factual grounds warranting disqualification." *Id.* at 649, 764 P.2d at 1299. A judge cannot preside over an action or proceeding if he or she is biased or prejudiced against one of the parties to the action. NRS 1.230(1). To disqualify a judge based on personal bias, the moving party must allege bias that " 'stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case.' " *In re Petition to Recall Dunleavy*, 104 Nev. 784, 790, 769 P.2d 1271, 1275 (1988) (quoting *United States v. Beneke*, 449 F.2d 1259, 1260-61 (8th Cir. 1971)). "[W]here the challenge fails to allege legally cognizable grounds supporting a reasonable inference of bias or prejudice," a court should summarily dismiss a motion to disqualify a judge. *Id.* at 789, 769 P.2d at 1274.

In this case, Ms. Rivero alleged that the district court judge was biased in favor of Mr. Rivero because he is an attractive man and was biased against Ms. Rivero because she is an attractive woman. Ms. Rivero also alleged that the judge was determined to rule only for Mr. Rivero and that the judge was not interested in hearing the case on the merits. The only evidence of these allegations are statements in Ms. Rivero's motion to disqualify and her attorney's affidavit. The hearing transcripts do not reveal any bias on the district court judge's part. Thus, Ms. Rivero has not established legally cognizable grounds for disqualification. *Id.* Accordingly, we conclude that the district court judge did not abuse her discretion when she refused to recuse herself. We also conclude that the chief judge properly denied Ms. Rivero's motion to disqualify the district court judge without considering a reply from Ms. Rivero or holding a hearing on the motion because Ms. Rivero did not establish legally cognizable grounds for an inference of bias. Therefore, summary dismissal of the motion was proper.[10] *Id.*

---

[10]Ms. Rivero argues that the chief judge abused her discretion because she prevented her from filing a reply brief. However, Ms. Rivero provides no citations to the record indicating that the chief judge refused to allow Ms. Rivero to file a reply brief, nor does Ms. Rivero cite to any authority requiring the chief judge to allow her to file a reply brief. NRAP 28(a)(8)(A); NRAP 28(e)(1).

## VI. *The district court's award of attorney fees to Mr. Rivero*

In addition to denying Ms. Rivero's disqualification motion, the district court awarded Mr. Rivero attorney fees arising from defending against the motion. Ms. Rivero argues that the district court abused its discretion when it awarded Mr. Rivero attorney fees because Ms. Rivero had a reasonable basis to move for the district court judge's disqualification. Ms. Rivero also contends that NRS 1.230, which prohibits punishment for contempt if a party alleges that a judge should be disqualified, prohibits an award of attorney fees under NRS 18.010 and sanctions under EDCR 7.60 and NRCP 11. We disagree that the contempt prohibition of NRS 1.230(4) prohibits attorney fees as a sanction for filing a frivolous motion to disqualify a judge. However, we conclude that the district court abused its discretion in awarding attorney fees because substantial evidence does not support the sanction.

### A. *Contempt prohibition of NRS 1.230(4)*

Under NRS 1.230(4), "[a] judge or court shall not punish for contempt any person who proceeds under the provisions of this chapter for a change of judge in a case." Contempt preserves the authority of the court, punishes, enforces parties' rights, and coerces. *Warner v. District Court*, 111 Nev. 1379, 1382-83, 906 P.2d 707, 709 (1995). On the other hand, the district court's discretion to award attorney fees as a sanction under NRS 18.010(2)(b), for bringing a frivolous motion, promotes the efficient administration of justice without undue delay and compensates a party for having to defend a frivolous motion.

In this case, the district court did not state the basis for the attorney fees sanction but found that Ms. Rivero's motion to disqualify was meritless. It appears that the district court sanctioned Ms. Rivero to compensate Mr. Rivero for having to defend a frivolous motion, which is explicitly allowed under NRS 18.010(2)(b). This is not akin to the district court holding Ms. Rivero in contempt for simply requesting a change of judge, which is prohibited under NRS 1.230(4). Therefore, the contempt prohibition of NRS 1.230(4) does not apply. Although the contempt provision of NRS 1.230(4) does not prevent the district court from awarding attorney fees as a sanction pursuant to NRS 18.010(2)(b), we conclude that the district court abused its discretion in awarding attorney fees in this case for the reasons discussed below.

### B. *Attorney fees sanction for filing a frivolous motion*

This court reviews the district court's award of attorney fees for an abuse of discretion. *Miller v. Wilfong*, 121 Nev. 619, 622, 119 P.3d

727, 729 (2005). The district court may award attorney fees as a sanction under NRS 18.010(2)(b), NRCP 11, and EDCR 7.60(b) if it concludes that a party brought a frivolous claim. The district court must determine if there was any credible evidence or reasonable basis for the claim at the time of filing. *Semenza v. Caughlin Crafted Homes*, 111 Nev. 1089, 1095, 901 P.2d 684, 687-88 (1995) (discussing NRS 18.010(2)(b)). Although a district court has discretion to award attorney fees as a sanction, there must be evidence supporting the district court's finding that the claim or defense was unreasonable or brought to harass. *Id.*

Here, the district court did not explain in its order the basis for awarding Mr. Rivero attorney fees and only noted in its summary order that Ms. Rivero's motion to disqualify the district court judge was without merit. Although Ms. Rivero did not prevail on the motion, and it may have been without merit, that alone is insufficient for a determination that the motion was frivolous, warranting sanctions. Nothing in the record indicates that the district court attempted to determine if there was any credible evidence or a reasonable basis for Ms. Rivero's motion to disqualify. Because the chief judge did not hold a hearing or make findings of fact, no evidence demonstrates that Ms. Rivero's motion was unreasonable or brought to harass. Therefore, we conclude that the district court abused its discretion in sanctioning Ms. Rivero with attorney fees for her motion to disqualify. Thus, we reverse and remand the district court's order granting an award of attorney fees to Mr. Rivero to the district court for further proceedings consistent with this opinion.

## CONCLUSION

We conclude that the district court abused its discretion when it determined, without making specific findings of fact, that the parties had joint physical custody and when it modified the custody arrangement set forth in the divorce decree. We therefore reverse and remand this matter to the district court for further proceedings, including a new custody determination pursuant to the definition of joint physical custody clarified in this opinion.

We further conclude that the district court abused its discretion in denying Ms. Rivero's motion to modify child support because it did not set forth specific findings of fact to justify deviating from the statutory child support formulas. We therefore reverse and remand this matter to the district court for further proceedings to calculate child support and modify the decree if modification is proper under the standard set forth in this opinion.

We further conclude that the district court judge properly refused to recuse herself, and the chief judge properly denied Ms. Rivero's motion for disqualification. We therefore affirm the district court's orders regarding the recusal and disqualification.

Finally, we conclude that the district court abused its discretion when it awarded Mr. Rivero attorney fees in relation to Ms. Rivero's motion to disqualify the district court judge. We therefore reverse and remand this matter to the district court for further proceedings consistent with this opinion.

HARDESTY, C.J., PARRAGUIRRE, DOUGLAS, CHERRY, and SAITTA, JJ., concur.

PICKERING, J., concurring in part and dissenting in part:

I respectfully dissent. While I agree that this case presents an opportunity to establish helpful precedent, I disagree with the majority's assessment of the record facts and the law that should apply to them.

This appeal grows out of a stipulated divorce decree. Two family court judges upheld the decree's stipulation for joint physical custody. The only modification either judge made was to adjust the child's residential timeshare arrangement slightly. After taking testimony from the parents, both of whom work, the second judge determined that the parents' days off differed perfectly. Thus, each parent could have the child while the other was at work, minimizing the time the child had to spend in day care, if a one-day adjustment to the residential timeshare was made.

I do not find in the original stipulated decree the inflexible 5/2 timeshare the majority does. After providing for "joint legal custody and joint physical care, custody and control" of the parties' daughter, the original decree provided for the father to have the child "each Sunday at 7 p.m. until Tuesday at 9:00 p.m. *in addition to any time agreed on by the Parties.*" (Emphasis added.) The residential timeshare, as adjusted, provided for the father to have the child from "Sunday at 1 p.m. until Wednesday at 2 p.m."—thus adding a day to the father's allotted two days and two hours per week but deleting the provision giving him such additional "time agreed on by the Parties" (who were having trouble agreeing to anything). The second family court judge made an express, on-the-record finding that, as adjusted, the residential timeshare arrangement was consistent with the stipulated decree's provision for joint physical custody—and in the child's best interest. The timeshare adjustment also obviated the mother's argument that the court should not have approved the stipulated decree's provision for a *Wright*-based offset, by which the parties had voluntarily agreed neither would pay child support to the other.

This strikes me as a sensible, maybe even Solomon-like solution. Instead of upholding the family court's exercise of sound discretion, however, the majority reverses and remands these parents to the family court for more litigation. On remand, the family court is directed to establish the exact percentage of time the child has spent with

each parent over the course of the past year;[1] to then apply a newly announced 40-percent formula on which joint physical custody and future child support will depend; and thereafter to enter formal findings, beyond those stated in the decree and in open court, respecting these and other matters.

I submit that this result and the underlying formula the majority adopts are contrary to statute and case precedent. The family court interpreted its decree in a way that was fair, supported by the record, and consistent with applicable law. A sounder result would be to recognize the distinction other courts have drawn between true custody modification and residential timeshare adjustments and support the family court's sound exercise of discretion as to the latter in this case.

## DISCUSSION

### The formulaic approach is inconsistent with Nevada law

I have a threshold concern with court-mandated formulas, in general, and with the 40-percent joint physical custody formula the majority adopts in this case, in particular, to determine child support and relocation disputes. A legislature has the capacity to debate social policy and to enact, amend, and repeal laws as experience and society dictate. Courts do not. The law courts apply is precedent-driven, or has its origin in statute or constitutional mandate. It is not only that judges tend to be innumerate, or that court-adopted formulas are of suspect provenance—though both are so—it is that laws adopted by judges are difficult to change if they do not work out. Because courts decide individual questions in individual cases, a bad rule of law can take a long time to return to a court; meanwhile, reliance interests counseling against changing that law are built. As the controversy over the original opinion and its withdrawal and replacement in this case suggest, establishing formulas is ordinarily best left to the Legislature.

More specifically troubling, the formulaic approach the majority adopts in this case is inconsistent with the approach the Nevada Legislature in fact chose to take. Thus, in 1987 the Nevada Legislature considered and rejected a proposal that would have established a 40-percent "joint physical custody" timeshare test and tied it to a corollary child support formula. A.B. 424, 64th Leg. (Nev. 1987), *discussed in Barbagallo v. Barbagallo*, 105 Nev. 546, 548, 779 P.2d

---

[1]The formulaic approach is especially problematic where, as here, the family court directs a highly specific timeshare. If the parties have abided by the timeshare directed, they will meet the court's formula and joint physical custody will be established under the formula. If they haven't, we will be incentivizing disregard of a court order and argument over whose fault the departure was. The family court's approach seems preferable, in that it encourages self-determination by enforcing the parties' agreed-upon decree and attempting to interpret it consistently with applicable law and the child's best interest.

532, 534 (1989). Instead of a mathematical formula, the 1987 Legislature adopted the multifactored approach to determining support found in today's NRS 125B.080. *Id.* Based on this history, in 1989 this court held that it is "inappropriate for the courts to adopt their own formulas when the mathematical approach to adjusting the formula in joint custody cases has been considered and rejected by the legislature." *Barbagallo*, 105 Nev. at 550 n.2, 779 P.2d at 535 n.2 (as amended by 786 P.2d 673 (1990)).

The point is not whether a formulaic approach is good policy, providing helpful bright-line rules; or bad policy, creating a hostile "on the clock" mentality inconsistent with truly cooperative joint parenting. On this, reasonable policymakers differ, as the foreign state statutes catalogued, *ante* at 424 n.5, 425 n.6, reflect. The point is that percentage time/support formulas are for the Legislature to evaluate, not for the court to establish by fiat.

The 40-percent joint physical custody test the majority adopts today, when tied, as intended, to eligibility for a child support offset under *Wright v. Osburn*, 114 Nev. 1367, 970 P.2d 1071 (1998), creates law indistinguishable from that *Barbagallo* says courts should abjure.[2] As a near-contemporaneous judicial interpretation of a controlling statutory scheme, *Barbagallo* should control. *See Neal v. United States*, 516 U.S. 284, 294-95 (1996) (giving "great weight to stare decisis in the area of statutory construction" because the legislature "is free to change this Court's interpretation of its legislation"; the Legislature, not the courts, "has the responsibility for revising its statutes"; and "[w]ere we to alter our statutory interpretations from case to case, [the Legislature] would have less reason to exercise its responsibility to correct statutes that are thought to be unwise or unfair" (internal quotation omitted)).

### *The family court's interpretation of its decree was sound*

#### *The stipulated decree was not irreconcilably inconsistent with joint physical custody*

At its heart, this case asks how we should interpret the parties' stipulated divorce decree. Historically, this court defers to a trial court's interpretation of its own decrees. "It is the province of the

---

[2]The majority justifies its adoption of a 40-percent test for joint physical custody as providing needed clarity in parental relocation as well as child support offset cases. *Ante* at 422, citing *Potter v. Potter*, 121 Nev. 613, 618, 119 P.3d 1246, 1249 (2005). Relocation is not an issue here because the stipulated decree provided that if either party moved away from Las Vegas, joint legal custody would continue but primary physical custody would shift to the mother, with liberal visitation, including full summers, for the father. If anything, the decree's relocation provision shows that the parties knew how to distinguish between joint and primary physical custody and meant what they said—an assumption that finds further support in the fact that each had experienced counsel in fashioning the stipulated decree.

trial court to construe its judgments and decrees." *Grenz v. Grenz*, 78 Nev. 394, 401, 374 P.2d 891, 895 (1962). Further, "[w]here a judgment is susceptible of two interpretations, that one will be adopted which renders it the more reasonable, effective and conclusive, and which makes the judgment harmonize with the facts and law of the case and be such as ought to have been rendered." *Aseltine v. District Court*, 57 Nev. 269, 273, 62 P.2d 701, 702 (1936) (internal quotation omitted).

Both family court judges acknowledged the tension between the stipulated decree's joint physical custody provision and its original residential timeshare provision. They resolved the tension by giving priority to the parties' overarching agreement to share joint legal and physical custody. The elasticity in the original timeshare provision, which gave the father such additional time "as agreed to by the Parties" beyond his specifically allotted time, makes this reading fair. It gives effect to all of the stipulated decree's provisions, and it is consistent with the parties' apparent intent and their frank, on-the-record admissions that neither believed the other was a bad parent, their dispute being mainly over money and scheduling.

The family court judges' reading of the stipulated decree also comports with NRS 125.490, which states: "There is a presumption, affecting the burden of proof, that joint custody would be in the best interest of a minor child if the parents have agreed to an award of joint custody." *See* NRS 125.480(1) and (3)(a) (stating preference for orders awarding joint custody and providing that "[i]f it appears to the court that joint custody would be in the best interest of the child, the court may grant custody to the parties jointly"; statement of reasons required only if joint custody denied). The parents here "agreed to an award of joint custody" and the family court judge specifically stated on the record that she found that the timeshare, as adjusted, was in the child's best interest because it maximized the child's time with each parent instead of at day care. Remanding for further findings regarding custody thus seems unnecessary.

### *The mother did not establish a basis to modify child support*

Nor do I find a basis in the record to remand for further findings as to support. While not elaborate, the decree specified the applicable statutory percentage and stipulated that the parties were agreeing to a downward deviation and the basis therefor. It read:

> The parties' respective obligation of child support for the parties' said minor child should are [sic] hereby offset and neither party is ordered to pay to the other child support; that this represents a deviation from the statutory child support formula as set forth in NRS 125B.070 (which states that child support for one child shall be eighteen percent (18%) of the non-custodial

parent's income), based on the parties' joint legal and physical custody arrangement, pursuant to NRS 125B.080, subsection (9)(j). Each party shall jointly pay for the support and care of the parties' minor child.

In addition, the stipulated decree obligated the father to pay for the child's health insurance at a cost of $80 per month and to contribute $50 per month to an education fund for her, controlled by the child's mother.

As the majority notes, the mother filed successive motions to modify support. In connection with the first motion to modify support, the court minutes reflect that the mother reaffirmed what was represented in the stipulated decree—that "the parties [stipulated to] share joint custody," and that "the parties' incomes are similar." Both motions to modify relied on the alleged inconsistency between the agreement for joint physical custody and the timeshare provision. But read in conformity with the presumption in NRS 125.490, the stipulated decree was not irreconcilably inconsistent with joint physical custody. Further, any theoretical inconsistency was eliminated when the second judge modified the residential timeshare by substituting "Wednesday" for such additional time "as agreed on by the Parties," establishing a 4/3 timeshare that falls within the majority's 40-percent rule. Because neither of the underlying motions in this case identified a basis for modifying support besides the asserted lack of true joint physical custody timeshare agreement, further proceedings and findings, beyond those the original decree stated to justify its downward deviation, are unwarranted.[3]

*Adjusting a residential timeshare in a joint physical custody arrangement is appropriate when in the child's best interest*

An agreement to share joint physical custody, interpreted in light of the child's best interest, should determine the appropriate residential timeshare, not the reverse. Citing *Wright*, 114 Nev. at 1368, 970 P.2d at 1071-72, and *Wesley v. Foster*, 119 Nev. 110, 112-13, 65 P.3d 251, 252-53 (2003), the majority states that "[o]ur law presumes that joint physical custody approximates a 50/50 timeshare." I do not read these cases as that definitive—much less as supporting the majority's holding that a residential timeshare arrangement that works out to a child spending less than 40 percent of his or her time

---

[3]In her reply in support of the motion to disqualify, the mother argued that the father had enjoyed an increase in income that independently justified modifying child support. While this would have been a proper basis to modify support, NRS 125B.145(4), the family court could not consider it since this basis was not raised in either motion to modify, both of which predated the motion to disqualify and the reply in support thereof, where these arguments first emerged. *Cf. Mosley v. Figliuzzi*, 113 Nev. 51, 61, 930 P.2d 1110, 1116 (1997) (holding

with one parent over the course of a year automatically invalidates a presumptively valid agreement for joint physical custody. As we recognized in *Mosley*, 113 Nev. at 54, 930 P.2d at 1112, a decree can validly establish joint physical custody even though the time-share contemplated at the outset is not a 50/50 (or even a 60/40) arrangement, but one that will require fine-tuning over time.

Joint physical custody may ideally signify something approaching a 50/50 timeshare. However, I am concerned that our judicially mandated 40-percent formula will prove unsatisfactory, especially when used, as intended, to determine support and relocation disputes. Lives change and a child's time is divided, not just between his or her parents, but among friends, school or day care, extended family, sports, and other pursuits. Practical questions seem certain to scuff the bright-line rule—questions like how to count hours the child spends with people besides either parent, or which parent to credit for time the child spends pursuing activities both parents support. Of greater concern, making child support, relocation, and custody determinations depend on parents keeping logs of the number of hours each year a child spends with one parent or the other (leaving aside the calculation and credit questions) detracts from the type of true co-parenting our statutes try to promote. *See* NRS 125.460; NRS 125.490; *see also In re Marriage of Birnbaum*, 260 Cal. Rptr. 210, 214-15 (Ct. App. 1989) (dismissing as a "popular misconception" the idea "that joint physical custody means the children spend exactly one-half their time with each parent"; noting that "[p]arents' demands for equal amounts of a child's time [can] constitute a disservice to the child"; and that, while "[i]n some cases the nature of the relationship between the parents may necessitate this kind of inflexibility[ u]sually it is temporary, and when the former spouses have adjusted to their new and limited relationship . . . mathematical exactitude of time is no longer necessary"); Rutter's, *California Practice Guide to Family Law* § 7:358 (2009) (noting that "[a] joint custody order does *not* mean the child must equally split all of his or her time between the parents"); *see also Mosley*, 113 Nev. at 60, 930 P.2d at 1116 (noting that "NRS 125.460 dictates the public policy of this state in child custody matters [which is] that the best interests of children are served by frequent associations and a continuing relationship with both parents and by a sharing of parental rights and responsibilities of child rearing" (internal quotations omitted)).

---

parties entitled to a written motion and advance notice of the alleged grounds before a custody modification order is entered). Now that the original decree is more than three years old, the mother is entitled to have its provisions respecting child support reviewed in any event, NRS 125B.145(1), but that is not the basis for reversal and remand.

This case invites us to distinguish between adjusting parents' residential timeshare and formal proceedings to modify custody in the stipulated joint physical custody setting. California Family Code section 3011, like NRS 125.490(1), states a "presumption affecting the burden of proof" that agreements providing for joint custody are in a child's best interest. Addressing joint physical custody agreements, several intermediate California courts have exhorted "parents [to] understand that successful joint physical custody depends upon the quality of the parenting relationship, not the allocation of time." *In re Marriage of Birnbaum*, 260 Cal. Rptr. 210, 216 (Ct. App. 1989); *see Enrique M. v. Angelina V.*, 18 Cal. Rptr. 3d 306, 313 (Ct. App. 2004).

Both *Birnbaum* and *Enrique M.* recognize that disputes over the details of residential timeshare arrangements in cases involving joint physical custody are best settled by the parents, not the courts. *Enrique M.*, 18 Cal. Rptr. 3d at 314 (noting that such adjustments are "not on a par with a request to change physical custody from sole to joint custody, or vice versa"). Thus, they refuse to fuel these disputes by expanding them into full blown custody proceedings, or reviewing them on appeal as if that is what they involve. If the parents cannot agree on the child's schedule, the family court should be held to "possess[ ] the broadest possible discretion in adjusting co-parenting residential arrangements involved in joint physical custody." *Birnbaum*, 260 Cal. Rptr. at 216. This rule fosters the policy presuming joint custody to be in a child's best interests and may even "obviate the need for costly and time-consuming litigation to change custody, which may itself be detrimental to the welfare of minor children because of the uncertainty, stress, and even ill will that such litigation tends to generate." *Enrique M.*, 18 Cal. Rptr. 3d at 313 (internal quotation omitted).

The dispute underlying this case is not identical to those presented in *Birnbaum* and *Enrique M.*, since it concerned time spent in day care, and child support, not school choice and residence during the school year. But the underlying principle is similar: When parties have agreed to joint physical custody, absent a showing that some other arrangement is in the child's best interest, courts should try to make that agreement succeed. In my estimation, we do the parties and their child a disservice by remanding this case for more litigation, instead of affirming the family court.

## CONCLUSION

In sum, I would uphold the district court's order as consistent with Nevada statutes that presumptively favor joint custody, especially agreed-upon joint custody, and require that before a joint custody decree is modified, it must be shown that the child's best interest requires the modification. As district courts have broad discretion in deciding custody and support, so long as the policies

set by statute are applied, the district court properly adjusted the parties' timeshare agreement and declined to modify the child support obligation to which the parties agreed.

With the exception of the portion of the opinion affirming the order denying disqualification of the family court judge, therefore, I respectfully dissent.