## Sejal M. Sagar vs. Mahendra K. Sagar

No. 02-P-89.

Middlesex. October 16, 2002. - January 14, 2003.

Present: Cypher, Smith, & Grasso, JJ.

*Divorce and Separation,* Child custody. *Constitutional Law,* Freedom of religion. *Due Process of Law,* Child custody proceeding.

In a divorce proceeding, the judge did not err in ordering that a certain religious ritual not be performed on a minor child as requested by the father until the child was of sufficient age to make that determination herself, absent a written agreement between the parties, where, neither parent having demonstrated a compelling State interest justifying the court's intervention, the judge's order intruded least upon both parties' fundamental rights while remaining compatible with the child's health. [73-79]

In a divorce proceeding, the judge did not abuse his discretion in awarding joint legal custody to the parents and designating the wife's residence as the child's primary residence with liberal visitation to the husband. [79]

Complaint for divorce filed in the Middlesex Division of the Probate and Family Court Department on December 3, 1998.

The case was heard by *Spencer M. Kagan,* J.

*Chester Darling* (*Elton Watkins, III,* with him) for Mahendra K. Sagar.

*John E. McCabe* for Sejal M. Sagar.

Grasso, J. In the course of contentious divorce proceedings between two devout Hindus, the husband moved the court for permission to perform a Hindu religious ritual, Chudakarana,[1] upon the parties' young daughter. After a hearing, a Probate Court judge ordered that, "The religious ceremony known as

---

[1] On this record, Chudakarana can be described as a ceremony involving tonsure and prayer. While mantras are recited, a priest removes hair from five parts of the child's head, offering some of the hair ritually. The child's entire head is shaved, an auspicious mark is then placed on the child's head, and benedictions are offered.

Chudakarana shall not be performed on the minor child, until the child is of sufficient age to make that determination herself, absent a written agreement between the parties." On appeal from a divorce decree incorporating this order, the father maintains that the order violates his right to free exercise of religion as guaranteed by the First Amendment to the United States Constitution and the Constitution of the Commonwealth. He also claims the judge erred in granting the wife physical custody over the recommendation of a guardian ad litem that no designation of a primary physical custodian should be made.

We conclude that, in the circumstances presented, where neither parent demonstrated a compelling State interest justifying intervention, the judge's order should be affirmed because it intrudes least upon both parents' fundamental rights while remaining compatible with the child's health. We also conclude that the judge did not abuse his discretion in granting physical custody to the mother.

*Background.* We recite the following background from the judge's factual findings. Sejal Sagar (wife) and Mahendra Sagar (husband) were married in Baroda, India, in 1990 in a traditional religious ceremony. They had known each other for less than a month; the marriage had been arranged by their respective parents. After marriage, the couple moved to the United States, where their only child, a daughter, was born on June 17, 1998. They separated in November, 1998.

During and after marriage, the parties followed substantially the tenets of the Hindu faith. During the wife's pregnancy and after their daughter's birth, the parties engaged in Hindu ceremonies prescribed to mark various transitions in an infant's life, including a religious baby shower, a homecoming ceremony, a naming ceremony, a first visit to the temple, a ceremony for the child's first solid food, and an ear piercing ceremony. The parties attended temple weekly and even had a temple in their home at which they worshiped on a daily basis.

Their relationship was volatile and marred by numerous instances of the husband's physical and mental abuse of the wife. At various times, the husband threw things at the wife, hit her with a rolling pin, pulled her hair, chased her from their house, and burned her with a cigarette. He tore apart a book

given her by her brother. The husband was very controlling. He would allow his wife to telephone her relatives only on birthdays and anniversaries; and the contents of the kitchen cabinets had to be arranged as he specified. He threatened to stop paying tuition for the wife's education should she fail to get straight A's. The husband made questionable transfers of marital assets and refused to comply with a court order to hold certain funds in escrow.

*Discussion*

1. *The disagreement over Chudakarana.* Apart from disagreement over whether the Hindu sacrament of Chudakarana should be performed, the parties are in substantial agreement over the rearing of their daughter, including her religious upbringing. At trial, the husband presented evidence to support his position that a Hindu may not forgo the ritual of Chudakarana. The ceremony, which is believed to contribute to the child's longevity and ward off illness, should be performed before the child is three years old and is a necessary prerequisite to Hindu marriage. If the ceremony is not performed, an elder (here the father) may atone, allowing the ceremony to be performed at a later date.[2] The wife's position was that Chudakarana is not integral to the Hindu faith. Neither she nor her extended family believe in the efficacy or necessity of the ceremony. She did not participate in the ceremony, nor did her brother or cousins. Prior to marriage, the husband never inquired whether she had participated in Chudakarana; neither did she inform him that she had not.

a. *The husband's free exercise claim and the requirement of a sincere religious belief.* The father claims that the right to insist upon performance of Chudakarana upon his child is protected under both State and Federal Constitutional provisions respecting free exercise of religion. The judge's decision appears to conclude that the husband's free exercise claim fails because it is not grounded in a sincerely held religious belief. An essential prerequisite to a free exercise claim is a sincerely held religious belief. See *Dalli* v. *Board of Educ.,* 358 Mass. 753, 758 (1971)

---

[2]The atonement consists of a twelve-day fast, during which only food given voluntarily by others may be eaten on three of the days. Other variations on the fast permit consumption only of five products of the cow: urine, dung, milk, curd, and ghee (clarified butter).

("If the beliefs be sincerely held they are entitled to the same protection as those more widely held by others"); *Attorney Gen.* v. *Desilets*, 418 Mass. 316, 323 (1994) ("Conduct motivated by sincerely held religious convictions will be recognized as the exercise of religion.") A court may not examine the truth behind a person's religious beliefs. See *United States* v. *Ballard*, 322 U.S. 78, 86 (1943) ("Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs"). However, inquiry into the sincerity of a professed belief is constitutionally appropriate under both the First Amendment, see *Wisconsin* v. *Yoder*, 406 U.S. 205, 216 (1972); and art. 2 of the Massachusetts Constitution. See *Dalli* v. *Board of Educ.*, 358 Mass. at 758; *Attorney Gen.* v. *Desilets*, 418 Mass. at 329-330; *Opinion of the Justices*, 423 Mass. 1244, 1246-1247 (1996).

The judge did not question the husband's general devotion to Hinduism. At the same time, he found that "the husband's reasons for his insistence on having the Chudakarana are not purely religious[,] [but] an issue of control." The record supports this determination. We credit, as we must, the judge's finding, based upon his credibility assessment. See *Felton* v. *Felton*, 383 Mass. 232, 239 (1981). However, the determination that the husband's motivation is not "purely religious" is different altogether from whether his belief is "sincerely held." We need not, and should not, predicate a decision implicating a parent's free exercise right and his fundamental liberty interest in child rearing upon the tenuous ground that the parents' underlying religious belief is not "sincerely held" because the motivation is not "purely religious."[3]

b. *The competing fundamental rights.* Although the husband conceptualizes the probate judge's action as a State-imposed limitation on his own free exercise of religion, whether

---

[3]We also cannot delve into differences between the parties over whether strict adherence to Hindu religious belief requires that Chudakarana be performed. Resolution of that matter clearly would involve assessment of the religion's doctrine. See *Williams* v. *Episcopal Diocese of Massachusetts*, 436 Mass. 574, 579-580 (2002). The First Amendment protects sincerely held religious beliefs even when these differ from the established dogma of a religion or are not accepted as dogma by any religion. See *Pielich* v. *Massasoit Greyhound, Inc.*, 423 Mass. 534, 538 (1996).

Chudakarana is performed upon the child implicates not only the husband's but also the wife's fundamental rights. These include the right to direct their daughter's upbringing and religious formation.

The due process clause protects certain fundamental rights and liberty interests, including the right of a parent to direct a child's education and upbringing. See *Troxel* v. *Granville*, 530 U.S. 57, 65-66 (2000), and cases cited; *Opinion of the Justices*, 427 Mass. 1201, 1203 (1998) ("parents have a fundamental interest in their relationships with their children that is constitutionally protected"); *Blixt* v. *Blixt*, 437 Mass. 649, 652 (2002) (liberty interests of parents protected by the due process clause of the Fourteenth Amendment to the Federal Constitution are also protected by our State Constitution). When custody is contested, it is the divorcing parents who seek the impairment of each other's rights, and the "[S]tate is thrust into the role of mediator by necessity." *Carr* v. *Carr*, 44 Mass. App. Ct. 924, 925 (1998) (citation omitted). "In divorce proceedings, each parent is presumed to have equal custody, G. L. c. 208, § 31, and the court is only called on to make determinations as to a child's 'best interests' because the parties normally charged with making such decisions cannot themselves agree." *Blixt* v. *Blixt*, 437 Mass. at 677 (Sosman, J., dissenting). For the court to issue an order upholding the husband's fundamental right to direct that the ceremony of Chudakarana be performed upon the child would repudiate permanently the wife's corresponding right to direct that the ceremony not be performed. Conversely, to order that the ceremony not be performed, as the wife would have it, would repudiate the husband's fundamental rights.

A court is justifiably loath to order a restriction on either parent's fundamental rights to free exercise of religion and to determine the child's religious upbringing and is constitutionally limited in doing so unless there is a compelling State interest such as preventing demonstrable physical or psychological harm to the child. See *Blixt* v. *Blixt*, 437 Mass. at 655-657, 669. Put differently, when parents' religious views or practices conflict and cannot mutually coexist, the State may not intervene to vindicate one parent's fundamental rights to the exclusion of the other parent's rights unless a compelling State interest, such

as physical or psychological harm, is shown. See *Kendall* v. *Kendall*, 426 Mass. at 249-250; *Blixt* v. *Blixt*, 437 Mass. at 656.

c. *Intersection of the fundamental right to parent and the right to freely exercise one's religion.* "[P]arents together have freedom of religious expression and practice which enters into their liberty to manage the familial relationships. . . . But the 'best interests' of the child are to be promoted, and when the parents are at odds, the attainment of that purpose may involve some limitation on the liberties of one or the other of the parents." *Felton* v. *Felton*, 383 Mass at 233. See *Wisconsin* v. *Yoder*, 406 U.S. at 230 (deferring to parental rights with respect to religious upbringing of children absent harm to children's physical or mental health); *Kendall* v. *Kendall*, 426 Mass. 238, 243 (1997).

When the religious beliefs or practices of parents conflict and one parent seeks to have the court intervene and order that his religious inclinations be enforced to the exclusion of the other parent's, the parent seeking enforcement bears the burden of proving that the conflicting beliefs or practices cannot coexist without harm to the child such that a compelling State interest justifies restricting the correlative fundamental rights of the other parent. See *Felton* v. *Felton*, 383 Mass. at 240-241; *Kendall* v. *Kendall*, 426 Mass. at 248-250.

Here, the husband failed to demonstrate a compelling State interest for performing the ceremony on the child. Evidence was lacking that failure to perform the ceremony would "cause the child significant harm by adversely affecting the child's health, safety, or welfare." *Blixt* v. *Blixt*, 437 Mass. at 658. "[H]arm to the child from conflicting religious instructions or practices, which would justify such a limitation [on a parent's right to freedom of religious expression or practice] should not be . . . assumed or surmised; it must be demonstrated in detail." *Felton* v. *Felton*, 383 Mass. at 233-234. The judge would have erred had he concluded that a compelling State interest justified restricting the wife's fundamental rights by ordering that the ceremony be performed. See and compare *id.* (order restricting father's fundamental right to instruct children in Jehovah's Witness religion was not constitutionally permissible because mother failed to demonstrate the requisite physical or psychological harm to the child).

The question remains, however, as to the consequence of the husband's failure of proof. The wife did not establish that performing the ceremony would subject the child to physical or psychological harm, a compelling State interest that would support an order restricting the husband's fundamental rights. The judge was not required to order that the ceremony be performed, as the husband wished, merely because the wife had failed to prove that to do so would be harmful to the child. See *Blixt* v. *Blixt*, 437 Mass. at 656. Resolution of such a quandary that implicates both parents' fundamental constitutional rights should not depend solely upon a fortuity of pleading, upon which party initially seeks court assistance. Often, even though the competing parental religious preferences are irreconcilable, no physical or psychological harm will inure to the child from either parent's religious inclinations. "Sometimes . . . . diversity of religious experience [can be] a sound stimulant for a child." *Kendall* v. *Kendall*, 426 Mass. at 249.

Here, the evidence did not establish either proposition — that the child would suffer physical or psychological harm by undergoing or by not undergoing the disputed ceremony. A rule whereby the opposing parent's religious inclination must prevail when the moving parent fails to carry the requisite burden of proof would create an arbitrary and unsatisfying basis for decision. Had the other parent been the moving party, such a burden would have been upon her. Consequently, the rule cannot require that, unless the moving party proves physical or psychological harm, the other parent's inclination necessarily prevails.

However, the State must not sit idly by in the absence of proof by one parent of a compelling interest that justifies restricting the other parent's competing and irreconcilable fundamental rights. The State has a compelling interest in adjudicating disputes between parents who seek the impairment of each other's fundamental liberty interest in child rearing. See *Blixt* v. *Blixt*, 437 Mass. at 652, 669. This compelling interest requires an accommodation that "intrudes least on the religious inclinations of [either] parent and is . . . compatible with the health of the child." *Felton* v. *Felton*, 383 Mass at 235. State action such as this that infringes on a fundamental constitutional

right is to be examined under a strict scrutiny formula requiring (1) a compelling State interest, and (2) action narrowly tailored to further that interest. *Blixt* v. *Blixt*, 437 Mass. at 655-656.

The judge's denial of the husband's motion may give the appearance of endorsing the result requested by the wife, that the ceremony not be performed. However, the judge's order is not the equivalent of directing that the ceremony never be performed. Nor is the order predicated upon a determination that physical or psychological harm would befall the child from performing the ceremony. Rather, absent proof either way, the order is a narrowly tailored accommodation that "intrudes least on the religious inclinations of either parent and . . . is compatible with the health of the child." *Felton* v. *Felton*, 383 Mass. at 235

The order neither imposes any limitation upon nor favors either parent's ability to communicate beliefs concerning Chudakarana or to participate in any other beliefs or practices of their shared Hindu faith. The order does not coerce the father to believe as the mother does; nor does it compel him to practice his religion in a particular way. Contrast *Kendall* v. *Kendall*, 426 Mass. at 249-250 (demonstrable physical and psychological harm to the children's Jewish identity justified restricting the father's rights to free exercise of his Fundamentalist Christianity and to determine the religious upbringing of his children). The order leaves open to the parties the opportunity to agree in the future and does not bar future court intervention on this issue should the child be suffering from physical or psychological harm. Finally, the order respects the child's ability to eventually control her own religious destiny while encouraging continued exposure to her parents' religion. See *Wisconsin* v. *Yoder*, 406 U.S. at 243 (Douglas, J., dissenting) ("[r]eligion is an individual experience" and children are also granted freedom of religion). In fact, the law encourages a child's "exposure" to her parents' religious views even when the views are divergent, provided the exposure is not harmful. *Felton* v. *Felton*, 383 Mass. at 234.

In sum, the evidence as to the impact of performing, or not performing, Chudakarana on the child was insufficient either way to have justified an order restricting either parent's fundamental rights. At such a juncture, the appropriate recourse

was an accommodation that intruded least upon both parents' religious inclinations and, at the same time, was compatible with the child's health and well being. The challenged order represents such an accommodation.

2. *The order for physical custody.* The father also appeals from the judge's order granting physical custody to the wife. "The decision of which parent will promote a child's best interests 'is a subject peculiarly within the discretion of the judge.' " *Bak* v. *Bak*, 24 Mass. App. Ct. 608, 616 (1987) (internal citation omitted). While a judge may consider a guardian ad litem's recommendations, the judge is required to draw his own conclusions: "[T]he responsibility of deciding the case [is] his and not that of the guardian." *Delmolino* v. *Nance*, 14 Mass. App. Ct. 209, 212 (1982), quoting from *Jones* v. *Jones*, 349 Mass. 259, 265 (1965). Here, the judge found that both parents truly love the child and that the child is equally comfortable with both parents. The judge also found that both parents are willing to meet the child's needs and work together to comply with the parenting plan. The judge accepted the guardian ad litem's finding that both parents agreed that it was appropriate for the wife to stay at home due to the child's age. The visitation schedule allows the husband to spend every weekend and one day a week with the child. The judge did not abuse his discretion in awarding joint legal custody to the parents and designating the wife's residence as the child's primary residence with liberal visitation to the husband.

*Judgment affirmed.*