129 Nev., Advance Opinion 28

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| ALEXANDER FALCONI, AN INDIVIDUAL,<br>Petitioner,<br>vs.<br>SECRETARY OF STATE OF THE STATE OF NEVADA,<br>Respondent,<br>and<br>MONICA ANN FARRAR,<br>Real Party in Interest. | No. 59554<br><br>**FILED**<br><br>APR 25 2013<br><br>TRACIE K. LINDEMAN<br>CLERK OF SUPREME COURT<br>BY _____<br>CHIEF DEPUTY CLERK |

Original proper person petition for a writ of mandamus challenging the issuance of a fictitious address under NRS 217.462-.471.

*Petition denied.*

Alexander Falconi, Reno,
in Proper Person.

Catherine Cortez Masto, Attorney General, and C. Wayne Howle, Solicitor General, Carson City,
for Respondent.

Fry & Berning, LLC, and Kathrine I. Berning, Reno,
for Real Party in Interest.

---

BEFORE HARDESTY, PARRAGUIRRE and CHERRY, JJ.

## OPINION

By the Court, CHERRY, J.:

Monica Ann Farrar and Alexander Falconi share joint legal and physical custody of their minor child. Farrar properly obtained, based

13-12098

on evidence of domestic violence, a fictitious address from the Secretary of State, who cannot disclose Farrar's true address without a court order. The question we must decide is whether Falconi may seek the disclosure of Farrar's home address. We conclude that, as a co-parent, Falconi may seek the disclosure of Farrar's address in the district court by extraordinary writ, and in determining whether to grant the writ, the district court must consider whether Farrar can establish that Falconi was a perpetrator of domestic violence. If established, the burden shifts to Falconi to show that despite the domestic violence, disclosure is in the child's best interest. As this is not the proper court to consider Falconi's petition for extraordinary relief, we deny the petition.

## FACTUAL BACKGROUND

Petitioner Alexander Falconi and real party in interest Monica Farrar lived together and had a child, but troubles led to the end of the relationship. On one occasion, Falconi called the police to report a suicide attempt by Farrar, for which she was hospitalized for one week followed by ongoing medical care. Another time, the police were called to the parties' home to investigate a fight between Falconi and Farrar. In the police report from that incident, Farrar asserted that Falconi had shoved her and thrown her onto the couch. She also reported that she had grabbed his shoe and would not let go, so he pulled her onto the couch, wrapped his legs around her, and then pushed her away. Neither party was arrested as a result of this incident.

Following these events, the parties separated, and Falconi instituted child custody proceedings in the district court to establish the parties' respective custody and visitation rights. One month later, and five months after the aforementioned fight involving the police, Farrar obtained a temporary restraining order from a domestic relations hearing

master, which prohibited Falconi from having any contact with Farrar or the parties' child and which gave Farrar temporary custody of the child. The temporary restraining order was issued on a form stating that the court had found "that an act of domestic violence ha[d] occurred and/or [that Falconi] represent[ed] a credible threat to the physical safety of the above-named Applicant." Nothing in the record establishes the specific grounds on which the restraining order was sought or the basis for the grant of the order.

At a subsequent hearing regarding the possible extension of the restraining order, Farrar testified that, at different times, Falconi had pushed her, thrown her down the stairs, kicked her, slapped her, and followed her home from work without her permission. She also asserted that Falconi had "threatened to take her out" during a phone conversation. Falconi denied telling Farrar that he would "take her out" and denied striking her, although he admitted that he had put his hands on her on one occasion when she tried to block him from leaving. At the conclusion of the hearing, the district court extended the temporary restraining order for an additional two and a half months. Thereafter, Farrar apparently did not seek any further extensions of the temporary restraining order.

Three months after the restraining order expired, the district court awarded the parties joint legal and physical custody of their child. In doing so, the court did not discuss the temporary restraining order or make any findings regarding domestic violence. It does not appear from the record before us that any arguments or evidence were presented to the district court regarding any domestic violence issues or the temporary restraining order.

Five months after the issuance of the child custody order, Farrar applied to respondent Secretary of State for a fictitious address as part of Nevada's fictitious address program for domestic violence victims. *See* NRS 217.462-.471. Although it is not clear from the record what prompted Farrar to take this action, in her application, Farrar stated that she was a victim of domestic assault and stalking. In support of her application, Farrar submitted the initial form restraining order that she had obtained a year earlier.

Based on her application and submission of the temporary restraining order, the Secretary of State issued Farrar a fictitious address. Initially, Falconi attempted to challenge the issuance of the fictitious address through a petition for judicial review in the district court, which that court denied on the merits. On appeal from that order, this court affirmed that denial, but did so solely on the ground that the district court lacked jurisdiction under Nevada's Administrative Procedure Act to review the Secretary of State's decision. Falconi then filed in this court this original petition for a writ of mandamus, seeking an order directing the Secretary of State to remove Farrar from the fictitious address program.

In his petition, Falconi primarily argues that the Secretary of State should have considered whether the temporary restraining order submitted by Farrar in support of her application was specific evidence that she had been a victim of domestic violence. He further contends that the Secretary should have concluded that the temporary restraining order was insufficient for this purpose, and therefore, denied Farrar's application. In making this argument, Falconi also asserts that he has a

fundamental liberty interest in parenting his child that is infringed on by Farrar's use of a fictitious address.

## DISCUSSION

Extraordinary writ relief is within this court's discretion. *See Walker v. Eighth Judicial Dist. Court*, 120 Nev. 815, 819, 101 P.3d 787, 790 (2004). We may exercise our discretion to consider a writ petition when the petitioner does not have an adequate remedy at law and when "an important issue of law needs clarification." *See Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197-98, 179 P.3d 556, 558-59 (2008). Here, Falconi presents important legal issues, regarding the fictitious address statutes and a co-parent's ability to seek disclosure of the other parent's address, that need clarification, and he does not have an adequate remedy at law. Thus, our consideration of this writ petition is appropriate.

As Falconi's arguments mainly focus on the process through which a fictitious address is obtained, we begin by examining the process and operation of the fictitious address program before turning to Falconi's specific arguments.

*Overview of the fictitious address program*

Nevada's fictitious address program was enacted in 1997 to help domestic violence victims establish and maintain confidential home addresses. *See* S.B. 155, 69th Leg. (Nev. 1997) (Bill Summary). To accomplish this goal, the fictitious address program provides that "[a]n adult person, a parent or guardian acting on behalf of a child, or a guardian acting on behalf of an incompetent person may apply to the Secretary of State to have a fictitious address designated by the Secretary of State serve as the address of the adult." NRS 217.462(1).

In order to receive a fictitious address, an individual must submit to the Secretary of State an application containing "[s]pecific evidence showing that the adult, child or incompetent person has been a victim of domestic violence, sexual assault or stalking before the filing of the application." NRS 217.462(2)(a). The relevant statute allows, as examples of specific evidence, "an applicable record of conviction, a temporary restraining order or other protective order." NRS 217.462(4). Once an applicant submits an application accompanied by the required evidence, the Secretary of State *must* approve the application, NRS 217.462(4), making the applicant a participant in the program, and *must* issue the participant a fictitious address. NRS 217.464(1)(a).

Following the issuance of the fictitious address, the Secretary of State forwards any mail received for the participant to the participant at his or her actual address. NRS 217.464(1)(b). The Secretary of State is further prohibited from making records containing the participant's name, confidential address, or fictitious address available for inspection and copying unless the "address is requested by a law enforcement agency . . . or [t]he Secretary of State is directed to do so by lawful order of a court of competent jurisdiction, in which case the Secretary of State shall make the address available to the person identified in the order." NRS 217.464(2).

The Secretary of State may cancel a participant's fictitious address at any time if the participant changes his or her confidential address without properly notifying the Secretary, the Secretary determines that the participant knowingly provided false or incorrect information in the application, or the participant becomes a candidate for public office. NRS 217.468(3). But after four years, a participant's

fictitious address will be canceled by the Secretary of State as a matter of course. NRS 217.468(1). To prevent cancellation based on the expiration of time, a participant must demonstrate "to the satisfaction of the Secretary of State that the participant remains in imminent danger of becoming a victim of domestic violence, sexual assault or stalking." NRS 217.468(2). The process for making such a demonstration and seeking to extend the use of the fictitious address is not set forth in the program statutes.

*Issuance of the fictitious address to Farrar was proper*

Falconi argues that the temporary restraining order was insufficient to support the issuance of a fictitious address in light of the statutory scheme set forth above. We conclude that contrary to Falconi's assertions, the Secretary of State was required to issue the fictitious address to Farrar upon the presentation of the temporary restraining order. The fictitious address program does not authorize the Secretary of State to investigate or determine whether a protective order was issued based on a finding of domestic violence or on a finding of a potential threat of violence before approving an application. *See* NRS 217.462(4); *Leven v. Frey*, 123 Nev. 399, 403, 168 P.3d 712, 715 (2007) (explaining that "when a statute's language is plain and its meaning clear, the courts will apply that plain language").

The statutes' legislative history reveals that the Legislature specifically declined to authorize the Secretary of State to inquire into the circumstances underlying the evidence presented in support of an application. In fact, early versions of the bill required the Secretary to make a determination as to whether an applicant had actually been a victim of domestic violence, but the bill was ultimately modified to remove

any potential decision-making function from the Secretary's role in issuing a fictitious address. *Compare* S.B. 155(2)(4), 69th Leg. (Nev. 1997) (second reprint), *with* S.B. 155(2)(4), 69th Leg. (Nev. 1997) (third reprint); *see also* Hearing on S.B. 155 Before the Assembly Comm. on Ways and Means, 69th Leg. (Nev., June 26, 1997) (expressing concern that the earlier version of the proposed statute required the Secretary of State to exercise judgment and make legal determinations).

In the present matter, Farrar completed the application for entry into the program and attached the temporary restraining order as evidence in support of the application.[1] NRS 217.462(4). Regardless of Falconi's arguments concerning the standards for obtaining a temporary restraining order, because the fictitious address statutes specifically provide that a temporary restraining order constitutes sufficient evidence to support an application for a fictitious address, Falconi's arguments in this regard necessarily fail. *See id.; Leven*, 123 Nev. at 403, 168 P.3d at 715. Thus, upon receipt of the application with the required supporting evidence, the Secretary of State was obligated to accept Farrar into the program and issue her a fictitious address without inquiring into the circumstances underlying the issuance of the temporary restraining order. *See* NRS 217.462(4). As a result, Falconi's argument that the Secretary of State should have evaluated and rejected Farrar's application is not supported by the statute and does not entitle him to writ relief. *See* NRS

---

[1]Although we take no position on the fact that the temporary restraining order had expired when Farrar filled out her application, we note that NRS 217.462 is silent as to whether a temporary restraining order must be active in order to constitute specific evidence of domestic violence.

34.160 (providing that a petition for a writ of mandamus is available to compel the performance of an act that the law requires as a duty resulting from an office, trust, or station); *Int'l Game Tech., Inc. v. Second Judicial Dist. Court*, 124 Nev. 193, 197, 179 P.3d 556, 558 (2008) (same).

*Effect of the fictitious address program on custodial parenting rights*

While we conclude that the Secretary of State was required to accept Farrar into the program, Falconi's arguments, especially his focus on the fictitious address's interference with his ability to parent, and the facts of this case highlight potential problems that may arise when a parent who shares joint custody of his or her child is admitted into the fictitious address program; we examine the interplay between the fictitious address program and a party's custodial parenting rights.

*Balancing the protection of domestic violence victims with parental rights*

Parents who share joint legal custody of a child each have a legal responsibility for their child and for "making major decisions regarding the child, including [those related to] the child's health, education, and religious upbringing." *Rivero v. Rivero*, 125 Nev. 410, 420, 216 P.3d 213, 221 (2009); *see also Kirkpatrick v. Eighth Judicial Dist. Court*, 119 Nev. 66, 71, 64 P.3d 1056, 1059 (2003) (recognizing that parents have a "liberty interest in the care, custody, and management of their children" that is fundamental but not absolute). To make these decisions requires that both parents be informed regarding the child's circumstances and experiences. *See Rivero*, 125 Nev. at 420-21, 216 P.3d at 221 (discussing that parents in a joint legal custody situation "must consult with each other to make major decisions regarding the child's upbringing"). Knowing where the child resides allows a parent to have input regarding the environment in which the child is being raised.

When a parent who shares joint custody of his or her child enters into the fictitious address program, the custodial parenting issues become intertwined with the domestic violence victim's need for protection. Thus, in such a case, the rights of a custodial parent to know where his or her child resides must be balanced against the important state interest in protecting victims of domestic violence served by the state's fictitious address program.[2] *See Grant v. Pugh*, 887 N.Y.S. 2d 802, 807-08 (Fam. Ct. 2009) (recognizing that it may be proper to balance an individual's constitutional rights against a state's interest in protecting domestic violence victims).

*Procedure for seeking disclosure of a co-parent's confidential address*

The Nevada Legislature recognized that such conflicting interests may arise in certain cases, as one of the fictitious address statutes specifically permits a court to order the Secretary of State to disclose a participant's address to a specific party. *See* NRS 217.464(2)(b) (providing that the Secretary of State shall release a participant's address

---

[2]When domestic violence is alleged to have occurred before the issuance of a custody order, the district court will generally take these competing interests into account in fashioning a custody arrangement. *See* NRS 125.480(4)(k) (requiring a district court to consider whether either parent seeking custody "has engaged in an act of domestic violence against the child, a parent of the child or any other person residing with the child"). Nevertheless, the particular facts of this case demonstrate that, in light of the lack of discretion on the part of the Secretary of State in accepting an applicant, as well as the absence of any time limit as to when the evidence supporting the application may have been issued, circumstances may occur where a co-parent, who was previously the subject of a temporary restraining order that is used to support a fictitious address application, may at some point be awarded custody of his or her child.

if "directed to do so by lawful order of a court of competent jurisdiction"); *cf. Sagar v. Sagar*, 781 N.E.2d 54, 59 (Mass. App. Ct. 2003) (explaining that when divorcing parents seek to limit each other's custody rights, the state must act as mediator). This statute does not delineate the procedure by which a court could do so, however, and thus, we take the opportunity to address this issue here. Specifically, we must determine what procedure a court should apply in resolving a request to disclose a program participant's confidential home address. As neither our statutory nor our case authority sheds light on this question, we look to extrajurisdictional authority to guide our determination as to how Nevada courts should approach a custodial parent's request for release of a program participant co-parent's confidential home address.

A majority of states have enacted confidential address statutes,[3] but only one court has addressed a situation similar to the one

___

[3]These states are Arizona, Ariz. Rev. Stat. Ann. § 41-163 (Supp. 2012); California, Cal. Gov't Code § 6206 (West Supp. 2013); Colorado, Colo. Rev. Stat. § 24-30-2105 (2012); Connecticut, Conn. Gen. Stat. § 54-240c (2011); Delaware, Del. Code Ann. tit. 11, § 9613 (Supp. 2012); Florida, Fla. Stat. Ann. § 741.403 (West 2010); Idaho, Idaho Code Ann. § 19-5703 (Supp. 2012); Illinois, 750 Ill. Comp. Stat. Ann. 61/15 (West 2009); Indiana, Ind. Code Ann. § 5-26.5-2-2 (LexisNexis 2006); Kansas, Kan. Stat. Ann. § 75-457 (Supp. 2012); Louisiana, La. Rev. Stat. Ann. § 44:52 (2012); Maine, Me. Rev. Stat. tit. 5, § 90-B (2012); Maryland, Md. Code Ann., Fam. Law § 4-522 (LexisNexis 2012); Massachusetts, Mass. Ann. Laws ch. 9A, § 2 (LexisNexis 2012); Minnesota, Minn. Stat. Ann. § 5B.03 (West Supp. 2013); Mississippi, Miss. Code Ann. § 99-47-1 (Supp. 2012); Missouri, Mo. Ann. Stat. § 589.663 (West 2011); Montana, Mont. Code Ann. § 40-15-117 (2011); Nebraska, Neb. Rev. Stat. § 42-1204 (2004); New Hampshire, N.H. Rev. Stat. Ann § 7:43 (2012-13); New Jersey, N.J. Stat. Ann. § 47:4-4 (West 2003); New Mexico, N.M. 2012-13 Stat. Ann. § 40-13-11 (Supp. 2008); New York, N.Y. Exec. Law § 108 (McKinney Supp. 2013); North Carolina, N.C. Gen. Stat. Ann. § 15C-4 (2011); Oklahoma, Okla.

*continued on next page...*

presented here. *Sacharow v. Sacharow*, 826 A.2d 710, 714 (N.J. 2003). In *Sacharow*, the New Jersey Supreme Court addressed a situation in which the parties were going through divorce and custody proceedings, and while the case was pending, one party, Cynthia Sacharow, obtained a fictitious address upon the filing of an application attesting that she had reason to believe that she was the victim of domestic violence and that she feared further abuse. *Id.* The applicable New Jersey address confidentiality statute provides that a person may apply in accordance with the procedures set forth by the secretary of state and on a prescribed form to the secretary for a fictional address and that the application must be approved if it "contains: (1) a sworn statement by the applicant that the applicant has good reason to believe: (a) that the applicant is a victim of domestic violence as defined in this act; and (b) that the applicant fears further violent acts from the applicant's assailant." N.J. Stat. Ann. § 47:4-4(a)(1) (West 2003).

In the lower court proceedings regarding the parties' divorce, the Sacharows' stipulated to joint legal custody with Cynthia to have "sole residential custody," but left it to the district court to determine whether she would have to disclose her true residential address as requested by her then husband, Walter Sacharow. *Sacharow*, 826 A.2d at 714. On

---

*...continued*

Stat. tit. 22, § 60-14 (2003); Oregon, Or. Rev. Stat. § 192.826 (2011); Pennsylvania, 23 Pa. Cons. Stat. Ann. § 6705 (West 2010); Rhode Island, R.I. Gen. Laws § 17-28-3 (2003); Texas, Tex. Code Crim. Proc. Ann. art. 56.83 (West Supp. 2012); Vermont, Vt. Stat. Ann. tit. 15, § 1152 (Supp. 2012); Virginia, Va. Code Ann. § 2.2-515.2 (2011); Washington, Wash. Rev. Code. Ann. § 40.24.030 (West 2012); and West Virginia, W. Va. Code Ann. § 48-28A-103 (LexisNexis 2009).

consideration of that issue, the district court ordered Cynthia to disclose her true address to Walter. *Id.* Cynthia subsequently sought review of the determination requiring disclosure of her true address. *Id.* at 715.

On review, the *Sacharow* court held that courts in general were not bound by the fictitious address program, but concluded that Cynthia may nonetheless have a right to keep her address a secret. *Id.* at 720. In order to balance the competing interests of Cynthia in having a confidential address and Walter in knowing where his child was living, the *Sacharow* court concluded that a determination must be made as to whether disclosure of Cynthia's address was in the child's best interest, and therefore, the court reversed the district court's order requiring disclosure of Cynthia's address and remanded the matter to the district court for the purpose of addressing that issue. *Id.* at 721-22.

The court directed that, on remand, because Cynthia was seeking to curtail Walter's parental rights, she would have the burden of demonstrating that confidentiality was in the child's best interest. *Id.* at 722. To meet this burden, the *Sacharow* court held that Cynthia must prove that she had been the victim of domestic violence at Walter's hands and that she reasonably feared future violence. *Id.* If she did so, the burden would then shift to Walter to establish that address confidentiality was not in the child's best interest, based, among other things, on the good faith of the parties, their prior history of dealings, their relationship with the child, any efforts by one parent to alienate the child from the other, the effect confidentiality would have on their relationships, and any special needs of the child. *Id.*

We find the reasoning of the *Sacharow* court persuasive because it requires that any decision to compel disclosure of a program

participant's true address take into account both the interest of a domestic violence victim in remaining hidden from the person who harmed him or her and the interest of a custodial parent in making decisions regarding his or her child. We therefore adopt this framework for Nevada courts considering a request for disclosure of a confidential address and adapt it to be consistent with Nevada law.

*Petition for writ of mandamus*

The *Sacharow* court addressed the matter before it in the context of an appeal from an order entered in the parties' divorce and child custody action. Had this issue arisen in the context of the Farrar and Falconi's custody action, Falconi may have been able to file a motion in that action seeking an order compelling disclosure of Farrar's home address. But here, Farrar did not obtain the fictitious address until after the custody order was entered, and thus, we must address the procedure by which Falconi may seek an order compelling disclosure of Farrar's home address outside the context of the custody proceeding.

For a writ of mandamus to issue, the petitioner must have some right to relief. *See* NRS 34.160 (providing that "[t]he writ may be issued . . . to compel the admission of a party to the use and enjoyment of a right . . . to which the party is entitled and from which the party is unlawfully precluded by such . . . person"). In challenging confidentiality, the petitioner is claiming that he or she is being barred from the parental right of knowing where his or her child lives. *See Rivero*, 125 Nev. at 420, 216 P.3d at 221; *Kirkpatrick,* 119 Nev. at 71, 64 P.3d at 1059. Because the Secretary of State is charged with keeping a program participant's home address confidential and of releasing that address only upon court order, *see* NRS 217.464(2)(b), the Secretary must be made a party to the writ petition as a respondent. And the program participant, as the party

 

seeking to maintain confidentiality, must be included as a real party in interest and required to oppose the writ petition if the petitioner establishes an initial right to relief. In this way, a petition for a writ of mandamus allows the petitioner to give proper notice and bring all interested parties into the proceeding.

*Burden to establish disclosure*

When filing a petition for a writ of mandamus to compel disclosure, it is the petitioner's burden to establish that writ relief is warranted. *See Pan v. Eighth Judicial Dist. Court*, 120 Nev. 222, 228, 88 P.3d 840, 844 (2004). A custodial parent generally has a right to know where his or her child resides, even when the child is in the other parent's physical custody. *See Rivero*, 125 Nev. at 420-21, 216 P.3d at 221; *Kirkpatrick,* 119 Nev. at 71, 64 P.3d at 1059; *see also Sacharow*, 826 A.2d at 722. So, by demonstrating that he or she shares joint legal custody, a parent may meet the initial burden of proving that he or she has a right to know the co-parent program participant's home address when the child is living during his or her custodial period with that parent. *See Rivero*, 125 Nev. at 420-21, 216 P.3d at 221; *see also Sacharow*, 826 A.2d at 722.

If the party seeking disclosure meets this initial burden, the analysis discussed in *Sacharow* will then come into play. In particular, the party seeking to maintain the confidential address, as the real party in interest, will have the burden of proving that the party seeking disclosure was the perpetrator of an act of domestic violence against him or her or against the parties' child and that he or she fears further domestic violence. *See Sacharow*, 826 A.2d at 722; *cf.* NRS 125.480(5) (providing that if a court determines "by clear and convincing evidence that either parent or any other person seeking custody has engaged in one or more acts of domestic violence against the child, a parent of the child or any

other person residing with the child," a rebuttable presumption arises against that parent having sole or joint custody of the child). If the real party in interest establishes so, the burden shifts back to petitioner, who must then demonstrate that confidentiality is nonetheless not in the child's best interest under this state's best interest factors. *See* NRS 125.480(4) (setting forth the factors for a court to consider in determining a child's best interest, including the amount of conflict between the parents, the parents' ability to cooperate to meet the child's needs, the parents' mental and physical health, and any previous parental abuse or neglect of the child); *see also Sacharow*, 826 A.2d at 722. If the court ultimately determines that, under this analysis, disclosure is in the child's best interest, the court should order release of the confidential address. If not, the address may remain confidential.

Under this approach, the court addressing such a petition will necessarily be required to make factual determinations. For this reason, we conclude that the district court, rather than this court, is the appropriate tribunal for seeking this relief. *See Round Hill Gen. Improvement Dist. v. Newman*, 97 Nev. 601, 604, 637 P.2d 534, 536 (1981) (explaining that "an appellate court is not an appropriate forum in which to resolve disputed questions of fact," and that "[w]hen disputed factual issues are critical in demonstrating the propriety of a writ of mandamus, the writ should be sought in the district court, with appeal from an adverse judgment to this court"). And in light of the close relationship between child custody issues and the issues implicated in this situation, we conclude that, to the extent possible, such a petition should be filed in the same district court in which any child custody order has been entered. Here, however, because the Secretary of State was required to issue the

SUPREME COURT
OF
NEVADA

(O) 1947A

16

fictitious address under the program statutes, and because we are not the proper court to determine, in the first instance, whether the Secretary of State should be ordered to disclose Farrar's confidential home address, we deny the petition for a writ of mandamus.[4] *See id.*

_____, J.
Cherry

We concur:

_____, J.
Hardesty

_____, J.
Parraguirre

---

[4]Our denial of this petition does not impair Falconi's right to seek relief in the district court under the procedure outlined in this opinion. Also, because the district court lacked jurisdiction over Falconi's petition for judicial review seeking to overturn the Secretary's admission of Farrar into the fictitious address program and we had not addressed the procedure for compelling disclosure when the district court issued its previous order, the district court's denial of the petition for judicial review in the previous case is not binding on any future determination of this matter.