# IN THE COURT OF APPEALS OF IOWA

No. 19-1827
Filed September 23, 2020

**IN RE THE MARRIAGE OF DIVINITY B. O'CONNOR DE LOS RIOS ROBERTS AND GARETH D. ROBERTS**

**Upon the Petition of**
**DIVINITY B. O'CONNOR DE LOS RIOS ROBERTS, n/k/a DIVINITY B. O'CONNOR DE LOS RIOS,**
          Petitioner-Appellant,

**And Concerning**
**GARETH D. ROBERTS,**
          Respondent-Appellee.

_____

Appeal from the Iowa District Court for Story County, Steven J. Oeth, Judge.

The petitioner appeals the district court's decision denying her application for modification of the parties' dissolution decree. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Divinity Bridget O'Connor De Los Rios, Denver, Colorado, self-represented appellant.

Judd N. Kruse of Kruse & Dakin, L.L.P., Boone, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**SCHUMACHER, Judge.**

Divinity De Los Rios, formerly known as Divinity Roberts, appeals the district court's decision denying her application for modification of the parties' dissolution decree. We find the district court properly denied Divinity's request for sole legal custody, and we affirm on this issue. We reverse the district court's decision requiring Divinity to reveal her physical address based on her participation in an address-confidentiality program. The matter is remanded to the district court for consideration of the applicable law and for additional factual findings concerning the address-confidentiality program. Accordingly, we affirm in part, reverse in part, and remand to the district court.

## I.  Background Facts & Proceedings

Divinity and Gareth Roberts were married in Glosgow, Scotland in 2000. They have three children, D.R., born in 2001; M.R., born in 2002; and K.R., born in 2009. Divinity filed a petition for dissolution of marriage on November 18, 2016, at which time the parties were living in Ames, Iowa. The parties entered into a stipulated parenting plan, which provided for joint legal custody of the children, with D.R. and K.R. placed in Divinity's physical care and M.R. placed in Gareth's physical care. The district court incorporated the parenting plan into the dissolution decree, filed on August 24, 2017.

The parties' marriage was volatile and dysfunctional. Divinity stated Gareth physically and verbally abused her.[1] In her petition for modification, Divinity sought to unwind the dissolution decree; her modification action was based primarily on

---

[1] In 2005, Gareth pled guilty to a charge of simple assault, with Divinity as the victim.

incidents that occurred before the parties' dissolution. Divinity and Gareth had problems communicating during the marriage and afterwards. Gareth exercised visitation with K.R. for a few months after the dissolution and has not seen the child since November 2017. Divinity stated Gareth quit showing up for visitation, while Gareth stated Divinity quit requiring that K.R. attend visits. The trial court faulted both parents and found them both in contempt of court regarding their conduct as joint custodians.[2]

A founded report from the Iowa Department of Human Services (DHS) dated March 23, 2018, stated Gareth had failed to provide proper supervision to M.R., who was in his physical care. In this same report, M.R. relayed his mother was physically aggressive toward him. A second founded report, dated May 21, 2018, stated Gareth had not provided proper supervision to D.R., M.R., and K.R. This report referenced domestic violence in the home prior to the dissolution. K.R. told a social worker she did not want to have visits with her father because of events that occurred in the home prior to the dissolution. K.R. sees a therapist.

At the time of the dissolution, Divinity was a professor at Iowa Central Community College in Fort Dodge. Her job was eliminated, and her last day of employment was May 11, 2018. In June 2018, Divinity, D.R., and K.R. moved to Colorado. Divinity was not able to find full-time employment in Colorado but worked part time. Divinity did not provide Gareth with her address. Divinity did not provide information to Gareth concerning K.R.'s education, medical, or counseling

---

[2] Neither party appeals the contempt findings.

information.  Divinity and the children kept the same telephone numbers and email addresses they had while living in Iowa.

On June 26, 2018, Divinity filed a petition for modification, seeking sole legal custody and an increase in Gareth's child support obligation.  The modification hearing was held on June 5, 2019.[3]  Divinity represented herself at the hearing.  She presented evidence concerning her move to Colorado.  She cited the two DHS reports to support her claim that there had been a substantial change in circumstances.  Divinity claimed Gareth had abandoned K.R.  Gareth stated he wanted to have visitation with K.R. but realized it would take a while to build a relationship because he had not been allowed to see the child for more than a year.[4]

During the hearing, Gareth asked Divinity to reveal her physical address in Colorado.  Divinity stated she and K.R. were in an address-confidentiality program.  The court stated Divinity would need "to show me some order from some authority that says you can do this."  Later in the trial, Divinity submitted a letter from the Colorado Address Confidentiality Program (ACP), which stated Divinity was a participant in the ACP.  The program "provides a substitute legal address for

---

[3] At the time of the hearing, D.R. was eighteen years old and attending high school. M.R. was adjudicated to be delinquent and was in a placement established through juvenile court proceedings.  He was seventeen years old at the time of the modification action.  In the modification action, the district court found it was prohibited by Iowa Code section 232.3 (2018) from deciding any issues regarding the custody of M.R.  Consequently, the issue of sole legal custody relates only to K.R., the parties' daughter.

[4] K.R. traveled back to Iowa with her mother for the modification trial; however, Divinity did not inform Gareth that K.R. was in Iowa until the trial and refused to allow a visit.

victims of domestic violence, sexual offenses, and stalking" in order "to protect a survivor from future abuse."

The district court issued a ruling on June 24, denying Divinity's request to modify the dissolution decree to make her the sole legal custodian of K.R.[5]  The court noted that Divinity agreed to joint legal custody of the children in June 2017. The court found the relationship between Divinity and Gareth was difficult, as "[t]hey do not communicate, trust, or respect each other," but the situation was the same at the time of the dissolution.  The court concluded Divinity had not shown there was a substantial change in circumstances since the time of the dissolution. The court modified the visitation provision of the dissolution decree, finding Gareth and K.R. should both engage in counseling before Gareth had visitation with the child.

On the issue of Divinity's address, the court found:

> The court finds that disclosure of Divinity's address to Gareth is in the interest of justice, as they are joint legal custodians of KOR.  Any potential harm is outweighed by the interest in having Gareth participate in the parenting of KOR.  No alternative satisfies the necessity of disclosure.  IT IS ACCORDINGLY ORDERED that Divinity shall disclose her address to Gareth.  Gareth shall only use the address for purposes of issues legitimately related to the co-parenting of KOR and for no other purpose.

Divinity filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), claiming the court should have granted her sole legal custody of K.R. and should not require her to disclose her address to Gareth.  Divinity submitted a letter from

---

[5] The district court's order increased Gareth's child support obligation.  It also addressed allegations of contempt brought by each party against the other parent. The court found each parent was in contempt but did not impose any sanctions.

the Iowa Safe at Home Program Administrator, describing address confidentiality programs, and an affidavit by D.R. Gareth resisted the motion.

The district court denied Divinity's motion for reconsideration. The court again stated there had not been a substantial change in circumstances to warrant modification of custody. On the issue concerning Divinity's address, the court found it had "provided for Divinity's concerns by limiting Gareth's use of the information to purposes legitimately related to the co-parenting" of K.R. Divinity appeals the decision of the district court.[6]

## II.    Standard of Review

Actions for the modification of a dissolution decree are tried in equity. *In re Marriage of Trickey*, 589 N.W.2d 753, 756 (Iowa Ct. App. 1998). In equitable actions, our review is de novo. Iowa R. App. P. 6.907. "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the district court, but is not bound by them." Iowa R. App. P. 6.904(3)(g). "In child custody cases, the first and governing consideration of the courts is the best interests of the child." Iowa R. App. P. 6.904(3)(o).

## III.    Modification of Custody

Divinity contends the district court should have modified the parties' dissolution decree to grant her sole legal custody of K.R. She points out that after the dissolution decree was filed, there were two founded DHS reports stating Gareth had failed to provide adequate supervision to the children. She also claims D.R.'s testimony and a statement by K.R.'s therapist should be considered in

---

[6] Gareth waived filing an appellate brief.

finding there was a substantial change of circumstances.[7]  Divinity argues that

Gareth essentially abandoned the children.

In considering modification of the custody provision in a dissolution decree,

the Iowa Supreme Court has stated:

> A party seeking modification of a dissolution decree must prove by a preponderance of the evidence a substantial change in circumstances occurred after the decree was entered.  The party seeking modification of a decree's custody provisions must also prove a superior ability to minister to the needs of the children.
> The changed circumstances affecting the welfare of children and justifying modification of a decree "must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary."  The party seeking to modify a dissolution decree thus faces a heavy burden, because once custody of a child has been fixed, "it should be disturbed only for the most cogent reasons."

*In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (citations omitted).

The March 23, 2018, founded DHS report referred to Gareth's supervision

of M.R., who was in his physical care.  The second report, from May 21, 2018,

stated Gareth had not provided proper supervision to D.R., M.R., and K.R. and

addressed domestic violence in the home prior to the dissolution.  The second

report did not show there had been a substantial change in circumstances since

the time of the dissolution decree.  We conclude neither of the founded DHS

reports provided evidence of a substantial change in circumstances affecting K.R.

that occurred after the decree was entered.  *See id.*  Additionally, D.R.'s testimony

concerned events that occurred in February 2017, prior to when the dissolution

---

[7] Divinity also refers to psychological forensic interviews with the children.  The district court stated it did not receive DVDs of the interviews and did not consider them.  On appeal, we consider only evidence that has been submitted to the district court.  *See* Iowa R. App. P. 6.801.

decree was filed on August 24, 2017, in which the parties agreed to joint legal custody.

The letter from K.R.'s therapist reports domestic violence in the home prior to the dissolution decree. K.R. was diagnosed with post-traumatic stress disorder in December 2018. The report did not recommend severing the relationship between K.R. and Gareth, but stated: "Re-integration of a family member would typically occur after trauma symptoms resolve and could occur in the context of family therapy or therapeutic visitation." The court adopted this recommendation and determined Gareth's visitation with K.R. would be held in abeyance while they both cooperated with counseling to facilitate visitation.

We conclude Divinity did not meet her heavy burden to show modification of the dissolution decree to grant her sole legal custody of K.R. was in the child's best interests. *See id.* We affirm the district court's decision denying Divinity's request to modify the dissolution decree.

## IV. Disclosure of Address

Divinity claims the district court acted improperly by requiring her to disclose her physical address in Colorado to Gareth.[8] To the extent Divinity relies on the exhibits she submitted with her rule 1.904(2) motion, this evidence is outside the record submitted in the original modification hearing, and we determine it should not be considered on appeal. The purpose of a rule 1.904(2) motion is to reconsider the evidence already submitted, not to give the parties an opportunity

---

[8] Divinity listed her full physical address, including her apartment number, on the cover sheet of her appellate brief.

to submit additional evidence to support their positions. *See Homan v. Branstad*, 887 N.W.2d 153, 161 (Iowa 2016).

The Iowa ACP was enacted to permit victims of domestic abuse to use "an address designated by the secretary of state as a substitute mailing address" "to prevent their assailants or probable assailants from finding them." Iowa Code § 9E.1. "When a program participant presents the program participant's designated address to any person, that designated address shall be accepted as the address of the program participant." *Id.* § 9E.5(1). There is an exception when a "service or benefit would be impossible to provide without knowledge of the program participant's physical location." *Id.*

Iowa Code section 9E.8(1) provides:

1. If a program participant's address is protected under section 9E.5, a person shall not be compelled to disclose the program participant's address during discovery or during a proceeding before a court or other tribunal unless the court or other tribunal finds all of the following:
    a. A reasonable belief exists that the address is needed to obtain information or evidence without which the investigation, prosecution, or litigation cannot proceed.
    b. No other practicable means is available of obtaining the information or evidence from any other source.

In considering whether a participant's address should be disclosed, the court "shall consider whether the potential harm to the safety of the program participant is outweighed by the interest in disclosure relating to the investigation, prosecution, or litigation." *Id.* § 9E.8(2). Any disclosure of an address should be limited "to ensure that the disclosure and dissemination of the address will be no wider than necessary for the purposes of the investigation, prosecution, or litigation." *Id.* § 9E.8(3).

Section 9E.8 applies "to a participant in an out-of-state address confidentiality program substantially similar to the address confidentiality program established in this chapter." *Id.* § 9E.8(5). Divinity was registered with the ACP in Colorado, and thus, the provisions of section 9E.8 apply to her. *See id.*

The issue of disclosure of the address of a participant in an ACP was addressed in *Sacharow v. Sarcharow*, which involved issues of custody and visitation. *See* 826 A.2d 710, 713 (N.J. 2003). The parents had joint legal custody. *Id.* at 721. The Supreme Court of New Jersey determined the mother bore "the burden of proving the prior domestic abuse along with a realistic fear of recurrent abuse." *Id.* at 722. If she met her burden, then the burden shifted to the father "to provide evidence and prove that address confidentiality would not be in the best interests of the child." *Id.* The court stated:

> In assessing best interests in this context, the court should take into account the good faith of the parties; the prior history of dealings between them; the relationship between each parent and the child; any efforts by either party to alienate the child from the other parent; the effect that address confidentiality has or will have on those relationships and on the child; any special needs of the child; and any other matter that bears on the best interests of the child.

*Id.* The court remanded to the district court, noting "the sole benchmark is the best interests of the child." *Id.* at 721.

In *Falconi v. Secretary of State*, the Nevada Supreme Court addressed "potential problems that may arise when a parent who shares joint custody of his or her child is admitted into the fictitious address program." 299 P.3d 378, 384 (Nev. 2013). The court stated:

> When a parent who shares joint custody of his or her child enters into the fictitious address program, the custodial parenting issues become intertwined with the domestic violence victim's need for

protection. Thus, in such a case, the rights of a custodial parent to know where his or her child resides must be balanced against the important state interest in protecting victims of domestic violence served by the state's fictitious address program.

*Id.* at 384. The court found: (1) the parent seeking disclosure should show he or she shares joint legal custody; (2) the other parent has the "the burden of proving that the party seeking disclosure was the perpetrator of an act of domestic violence against him or her or against the parties' child and that he or she fears further domestic violence"; and (3) "the burden shifts back to petitioner, who must then demonstrate that confidentiality is nonetheless not in the child's best interest under this state's best interest factors." *Id.* at 387. The court remanded the case, stating the application of these factors was a factual determination best made by the district court. *Id.*

Additionally, in *Benson v. Peterson*, the Minnesota Court of Appeals addressed an issue concerning the confidentiality of a child's school and medical providers when the mother and child were participants in an ACP. No. A15-1967, 2017 WL 878685, at *6 (Minn. Ct. App. 2017). The court concluded the case should be remanded to the district court. *Id.* at *11. The court determined the district court needed to consider whether "'the address is needed to obtain information or evidence without which the investigation, prosecution, or litigation cannot proceed' and that 'there is no other practicable way of obtaining the information or evidence.'" *Id.* (citation omitted). The district court was also directed to consider "whether the potential harm to the safety of the participant is outweighed by the interest in disclosure." *Id.*

There has already been a determination in this case of the first factor—Gareth is the joint legal custodian of the child. *See Falconi*, 299 P.3d at 387. Divinity has the burden to show "prior domestic abuse along with a realistic fear of recurrent abuse." *See Sacharow*, 826 A.2d at 722; *accord Falconi*, 299 P.3d at 387 (noting the parent arguing against disclosure has the "the burden of proving that the party seeking disclosure was the perpetrator of an act of domestic violence against him or her or against the parties' child and that he or she fears further domestic violence"). If Divinity successfully meets her burden, then Gareth has the burden "to provide evidence and prove that address confidentiality would not be in the best interests of the child." *See Sacharow*, 826 A.2d at 722; *accord Falconi*, 299 P.3d at 387 (noting the party seeking disclosure "must then demonstrate that confidentiality is nonetheless not in the child's best interest").

Our overarching concern is the best interests of the child. *See Sacharow*, 826 A.2d at 721. In particular, the court must consider "whether the potential harm to the safety of the participant is outweighed by the interest in disclosure." *See* Iowa Code § 9E.8(2); *Benson*, 2017 WL 878685, at *11. Additionally, the court must find "[n]o other practicable means is available of obtaining the information or evidence from any other source." *See* Iowa Code § 9E.8(1)(b); *Benson*, 2017 WL 878685, at *11.

The district court recited the boilerplate language found in the act: that disclosure of Divinity's address to Gareth was in the interest of justice, as they are joint legal custodians of K.R., any potential harm is outweighed by the interest in having Gareth participate in the parenting of K.R., and no alternative satisfies the necessity of disclosure. The record, however, is void of possible alternates

considered by the court and how the non-disclosure would prevent Gareth's involvement in K.R.'s life as a joint custodian. The district court will need to consider whether Divinity's address is needed to obtain information or evidence, without which the investigation, prosecution, or litigation cannot proceed and that there is no other practicable way of obtaining the information or evidence, applying such to the facts of this case. The district court will need to make a determination of past domestic abuse and a realistic fear of future abuse. In addition, guided by case law from other states, a best interest analysis should be considered. We reverse the district court's decision requiring Divinity to reveal her physical address. The matter is remanded to the district court for consideration of the applicable law and for additional factual findings.

## V.     Conclusion

We affirm the district court on the issue of sole legal custody but reverse the court's decision requiring Divinity to disclose her physical address and remand for further proceedings on this issue.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**