# IN THE SUPREME COURT OF THE STATE OF NEVADA

IN THE MATTER OF THE PARENTAL RIGHTS AS TO THE MINOR CHILD C.A.L.

_____

CASEY L.,
Appellant,
vs.
ASHLEY B.,
Respondent.

IN THE MATTER OF THE PARENTAL RIGHTS AS TO THE MINOR CHILDREN S.L.L. AND S.E.L.

_____

CASEY L.,
Appellant,
vs.
JACQULYN M.,
Respondent.

No. 77074

FILED

FEB 2 7 2020

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

No. 77075

## *ORDER OF REVERSAL AND REMAND*

These are consolidated appeals from district court orders terminating appellant's parental rights as to three minor children. Fifth Judicial District Court, Nye County; Robert W. Lane, Judge.

Appellant Casey L. argues on appeal that the district court erred in relying on the provisions set forth in two stipulations and orders Casey entered into in 2016 with respondents Ashley B. and Jacqulyn M., the mothers of the children over whom his parental rights were terminated. Both stipulations included a provision that if Casey failed to adhere to the terms of the stipulations, it would be deemed an admission of two parental fault factors that could then be used to petition for and terminate Casey's parental rights under NRS Chapter 128. Casey contends that the 2016

20-07925

stipulations are unconscionable and against public policy, and that the violations enumerated in the stipulations cannot, standing alone, "constitute parental unfitness or [satisfy] the factors set forth in NRS 128.105(b) and NRS 128.106." We agree.

We have held that "parties are free to agree to child custody arrangements and those agreements are enforceable if they are not unconscionable, illegal or in violation of public policy." *Rivero v. Rivero*, 125 Nev. 410, 429, 216 P.3d 213, 227 (2009). We conclude that the terms of the stipulations at issue here do not comport with Nevada law and were thus unenforceable. *See id.* at 429, 216 P.3d at 226 (holding that when enforcing child custody agreements "the court must use the terms and definitions provided under Nevada law").

In the 2016 stipulations, Casey agreed that if he failed to pay child support, was convicted of domestic violence or any act of violence, harassed the mothers or the children, failed to provide his tax returns to the mothers each year, or failed to meet any other term of the stipulations, it would be deemed an admission of parental unfitness and failure to adjust, such that the mothers could petition to have his parental rights terminated if the court also concluded that doing so was in the children's best interests. The district court found that these factors "are among those that the [c]ourt could consider as 'Parental Fault' as defined by NRS [Chapter] 128." The district court then found that because Casey failed to abide by the terms of the stipulations by failing to pay child support, he was convicted of acts of domestic violence or other acts of violence, he failed to timely provide the mothers with his 2016 tax returns, parental fault was established. We conclude that this was error.

"[T]he district court in determining whether to terminate parental rights must consider *both* the best interests of the child and parental fault." *In re Termination of Parental Rights as to N.J.*, 116 Nev. 790, 800, 8 P.3d 126, 132 (2000) (emphasis added). NRS 128.105(1)(b) provides several factors for district courts to consider in determining parental fault. At least one factor must be present prior to the termination of parental rights, including "[u]nfitness of the parent" or "[f]ailure of parental adjustment." NRS 128.105(1)(b)(3), (4).

Under the terms of the 2016 stipulations, the district court could find Casey to be an unfit parent if he failed to pay child support to the mothers. Nevada law prohibits a district court from "find[ing] parental fault if one's failure to care for his or her children is the result of a financial inability to do so." *In re Parental Rights as to R.T.*, 133 Nev. 271, 274, 396 P.3d 802, 805 (2017); *see also* NRS 128.106(1)(e); NRS 128.013(1)(c). The 2016 stipulations do not provide for and the district court did not analyze whether Casey was able to pay child support from the date of the 2016 stipulations until the mothers filed their petitions. Accordingly, we conclude this provision in the 2016 stipulations is unconscionable and in violation of public policy. *See Rivero*, 125 Nev. at 429, 216 P.3d at 227.

Parental unfitness and a failure to adjust could also be found if Casey was "convicted of [d]omestic [v]iolence or any act of violence." "In determining neglect by or unfitness of a parent, the court shall consider, without limitation," eight conditions that could lessen a person's fitness to

SUPREME COURT
OF
NEVADA

(O) 1947A

3

be a parent. NRS 128.106(1)(a)-(h).[1] Because this provision in the 2016 stipulations is overly broad and encompasses acts of violence beyond those contemplated under NRS 128.106(1), we conclude it is unconscionable and in violation of public policy. *See Rivero*, 125 Nev. at 429, 216 P.3d at 227.

Finally, the 2016 stipulations also included provisions that Casey timely provide the mothers with his 2016 tax returns, that he not harass the mothers or children, and a catch-all provision for failure to meet any term of the stipulations, but none of these are conditions for a finding of parental unfitness as contemplated in NRS 128.106(1). Moreover, to find failure of parental adjustment, "[t]he parent . . . must be shown to be at fault in some manner . . . [and] cannot be judged unsuitable by reason of failure to comply with requirements and plans that are . . . impossible . . . to

---

[1]Of the eight conditions listed in in NRS 128.106(1), only two are relevant here:

. . . .

(f) Conviction of the parent for commission of a felony, if the facts of the crime are of such a nature as to indicate the unfitness of the parent to provide adequate care and control to the extent necessary for the child's physical, mental or emotional health and development.

(g) Whether child, a sibling of the child or another child in the care of the parent suffered a physical injury resulting in substantial bodily harm, a near fatality or fatality for which the parent has no reasonable explanation and for which there is evidence that such physical injury or death would not have occurred absent abuse or neglect of the child by the parent.

. . . .

abide by." *In re Parental Rights as to K.D.L.*, 118 Nev. 737, 748, 58 P.3d 181, 188 (2002) (alterations in original) (internal quotation marks omitted). Compliance with a catch-all provision in a child custody agreement could be impossible to abide by, especially when the other terms are overbroad, and we caution against reliance on such provisions for finding failure of parental adjustment. *See id.* (recognizing that "failure of parental adjustment as a basis for termination is fraught with difficulties and must be applied with caution") (internal quotation marks omitted). Therefore, we conclude that these provisions are also in violation of public policy.[2] *See Rivero*, 125 Nev. at 429, 216 P.3d at 227.

Having concluded that the terms of the 2016 stipulations were unconscionable and in violation of public policy, we conclude that the district court erred in finding that the stipulations were enforceable as contracts. *See, e.g., Mack v. Estate of Mack*, 125 Nev. 80, 95, 206 P.3d 98, 108 (2009) ("[T]he question of whether a contract exists is one of fact, requiring this court to defer to the district court's findings unless they are clearly erroneous or not based on substantial evidence."). Accordingly, we conclude that the district court abused its discretion in terminating Casey's

---

[2]Our holding here should not be construed as a mandate against parties entering into an agreement regarding parental fault. Rather, such agreements should be entered into cautiously because of the rigorous standards that must be met in determining parental fault. A contract necessarily is prospective in nature, and the strict standards Nevada courts must apply in determining parental fault make narrowly focusing on the correct factors difficult. Accordingly, parental fault agreements must conform with the statutory language of NRS 128.105(b) and NRS 128.106 in order to guard against an erroneous termination of parental rights.

parental rights as to C.A.L., S.S.L, and S.E.L. based on the 2016 stipulations.

For the reasons set forth above, we ORDER the judgments of the district court REVERSED and REMAND these matters with instructions for the district court to reevaluate whether termination of Casey's parental rights is warranted absent the 2016 stipulations.[3]

_____, J.
Parraguirre

_____, J.
Hardesty

_____, J.
Cadish

cc:    Hon. Robert W. Lane, District Judge
JK Nelson Law LLC
Smith Legal Group
Nye County Clerk

---

[3]Because we reverse the district court's orders and remand for it to reevaluate whether termination of Casey's parental rights is warranted, we do not decide the merits of his joinder argument. However, on remand, the district court should take into consideration NRCP 42(a) in conjunction with NRS 128.090(5) and (6) to determine whether joining both termination proceedings will be harmful to the children and make specific findings on the record.